Max F. Sack, Plaintiff, v. Arcole Midwest Corporation, a Corporation, S. J. Groves & Son Co., Inc., a Corporation, and L. B. Strandberg & Son Co., a Corporation, Defendants-Third Party Plaintiffs, Appellees, v. Commonwealth Plumbing Company, a Corporation, Third Party Defendant-Appellant. On Appeal of Commonwealth Plumbing Company, a Corporation.

Gen. Nos. 48,263, 48,264, 48,265.

First District, Second Division.

December 5, 1961.

William J. McKenna, Jacobs & McKenna, of Chicago (Norton Wasserman, of counsel), for appellant.

Ross, Kralovec & Sweney, Harold J. Ross, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court:

Max F. Sack, a plumber employed by the Commonwealth Plumbing Company, was injured in a fall from a scaffold at the River Road-Thorndale bridge of the Tri-State Tollway on October 31, 1958. He sued the general contractor, L. B. Strandberg & Son Co., Inc., and its two joint venturers, Arcole Midwest Corporation and S. J. Groves & Son Co., Inc. The complaint alleges that the defendants wilfully violated Sections 60 to 69 of the Structural Work Act in that the scaffold was not constructed in a safe and suitable manner causing a hand rail to collapse. At the conclusion of the opening statements of counsel and pursuant to a stipulation, the court directed a verdict and entered a judgment in favor of plaintiff and against the defendants for $100,000. It was stipulated that the third party complaint previously filed by the defendants against plaintiff's employer, Commonwealth Plumbing Company, proceed to trial before the jury then impaneled and that for the purposes of the action over the position of the three joint venturer defendants, now third party plaintiffs, be considered identical. The action over is predicated upon the theory of indemnity arising from the implied obligation to perform the subcontract with reasonable care and that a passive tort-feasor is entitled to contribution from an active tort-feasor. The employer's counterclaim against the third party plaintiffs for workmen's compensation paid was dismissed and a similar counterclaim against the injured employee was stricken. At the conclusion of the third party plaintiffs' case in chief, the third party defendant rested and its motion for a directed verdict was denied. The court then directed a verdict and entered judgment in favor of

the third party plaintiffs and against the third party defendant for $100,000. This defendant has appealed from that judgment. For convenience we call the third party plaintiffs the plaintiffs and the third party defendant the defendant.

The Illinois Toll Road Commission let a contract to plaintiffs for the construction of a section of the Tri-State Tollway. They were joint venturers and by stipulation are treated as an entity. As the general contractor they subcontracted a pipe installation to defendant which determined that its employees would need a scaffold designed by its foreman Gibisch. All material and labor required in the erection of the scaffold was furnished by defendant. The scaffold was used by defendant's employees exclusively. It was assembled, dismantled and moved from site to site as necessary by defendant's foreman Gibisch. Field Superintendent Brough, employed by general contractor Strandberg, was on the extensive job site daily to supervise Strandberg employees and to correlate and inspect the work of Strandberg's subcontractors, including defendant. Brough interrogated Gibisch before defendant started its work as to what type of scaffold defendant intended to use. Brough was on the defendant's scaffold when it was first erected. He thought it was of good design and safe. Max Sack, defendant's employee, was seriously injured in a fall from the scaffold. The proximate cause of his fall was an insecurely fastened hand rail. Neither Brough nor Gibisch personally checked the hand rail before the accident. Sack and another of defendant's plumbers on orders from Gibisch installed the hand rail the day before.

On Brough's inspection of the scaffold, when first erected on a different location, the hand rail seemed rigid and the scaffold good and safe. The testimony in the case was presented by five witnesses called by

346

plaintiffs. Plaintiffs also introduced photographs. Three of the witnesses were defendant's employees intimately involved in the scaffold work. The other two witnesses were Strandberg's employees. These five men disclosed all the facts material to the case from defendant's design of the scaffold through its construction and use to and including Sack's fall therefrom.

■ ■ Defendant's position is that the court erred in directing a verdict and entering a judgment for plaintiffs because in the absence of an express contract to indemnify against one's own act of negligence, there is no right, express or implied to indemnity or contribution by an active tort-feasor, and that while the evidence entitled defendant to a directed verdict, the contrary judgment demonstrates that reasonable minds would differ and that there was at least an issue of fact for the jury as to whether plaintiffs were guilty of active or passive joint negligence. In the absence of an express provision clearly requiring indemnity against one's active negligence, there is no right to indemnity, express or implied, by an active tort-feasor. George Sollitt Const. Co. v. Gateway Erectors, Inc., 260 F2d 165, 170–1. And an active tort-feasor is not entitled to contribution for damages paid in an action under the Structural Work Act. Bohannon v. Joseph T. Ryerson & Son, Inc., 16 Ill App2d 402, 404, 148 NE2d 602, reversed on other grounds, 15 Ill2d 470, 155 NE2d 585. The only question is whether plaintiffs were guilty of active negligence. Defendant says that plaintiffs had knowledge that there were no bolts on the hand rails, that their superintendent "saw the nails driven in" and that plaintiffs knew or should have known that such a hand rail amounted to a dangerous and defective condition. Defendant says further that the failure to have the safety rail properly bolted, secured and

347

braced violated the provisions of the Act. Defendant asserts that plaintiffs failed to object to the design of the scaffold, and in fact approved it as being good and safe, and that under these facts the court has no alternative to concluding that plaintiffs were joint participants with defendants in the tortious conduct.

■ ■ Where one does the act which produces the injury and the other does not join in the act but is thereby exposed to liability and suffers damage, the latter may recover against the principal delinquent, and the law will inquire into the real delinquency and place the ultimate liability upon him whose fault was the primary cause of the injury. Moroni v. Intrusion-Prepakt, Inc., 24 Ill App2d 534, 165 NE2d 346; Boston v. Old Orchard Business Dist., Inc., 26 Ill App2d 324, 168 NE2d 52; Gulf, Mobile & Ohio R. Co. v. Arthur Dixon Transfer Co., 343 Ill App 148, 98 NE2d 783; Employers Liability Assur. Corp. v. Empire City Iron Works, Inc., 184 NYS2d 728. There was no fact question presented or argued in the trial court. This is not a case of joint design, construction, maintenance or use of the scaffold by plaintiffs and defendant. The latter designed, erected, maintained and used the scaffold for the performance of the work subcontracted to be done by it. The evidence establishes without contradiction that the defendant was an active tort-feasor, while the plaintiffs were passive tort-feasors. We are of the opinion that the trial judge was right in directing a verdict for the plaintiffs. Therefore the judgment is affirmed.

Judgment affirmed.

FRIEND, P. J. and BRYANT, J., concur.