James Patrick O'Leary, Plaintiff-Petitioner (Cause No. 51,908), v. Arthur J. Siegel, d/b/a Seco Construction Company, Defendant-Respondent (Cause No. 51,908),

and

Arthur J. Siegel, d/b/a Seco Construction Company, Third-Party Plaintiff (Respondent in Cause No. 51,907, Appellee and Cross-Appellant in Cause No. 51,943), v. Henry Sylverne and Howard L. Simons, Individually and as Copartners, Doing Business as Avondale Engineering Co., Third-Party Defendants (Petitioners in Cause No. 51,907 and Appellant in Cause No. 51,943).

Gen. Nos. 51,907, 51,908, 51,943. (Consolidated.)

First District, Fourth Division.

January 28, 1970.

Rehearing denied March 4, 1970.

Kralovec, Sweeney, Marquard & Scoby, of Chicago (George E. Sweeney and Edward V. Scoby, of counsel), for plaintiff, James Patrick O'Leary, petitioner in Cause No. 51,908.

Patrick J. Muldowney, of Chicago (Sidney Z. Karasik, of counsel), for third-party defendants, Henry Sylverne and Howard L. Simons, individually and as copartners, doing business as Avondale Engineering Company, petitioners in Cause No. 51,907, and appellants in Cause No. 51,943.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Leonel I. Hatch, Jr. and D. Kendall Griffith, of counsel), for Arthur J. Siegel, doing business as Seco Construction Company, defendant-appellee.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, James Patrick O'Leary, filed a one-count action against defendant, Seco Construction Company, alleging a violation of the Structural Work Act. The com-

plaint was later amended to include a second count in common-law negligence. Seco then filed a third-party action for indemnity against plaintiff's employer, Avondale Engineering Company. The jury returned a verdict of $75,000 in favor of plaintiff and a not guilty verdict in favor of third-party defendant. The trial court denied Seco's motions of judgment notwithstanding the verdict in the original action and in the third-party action, but granted new trials in both causes.

Third-party defendant Avondale then filed a notice of appeal. Subsequently, Avondale and O'Leary filed petitions for leave to appeal from the order of the trial court granting new trials and leave was granted on both petitions, 51,907 and 51,908. The original notice of appeal claimed by Avondale was then docketed as cause 51,943 and consolidated with the two petitions.

Seco, as respondent to plaintiff's petition and respondent-cross appellant as to third-party defendant's petition and appeal, seeks review of the trial court's denial of its motions for judgment notwithstanding the verdict.

The facts of the case reveal that in June 1958 Seco entered into a contract with the Federal government to perform certain reconstruction work at the United States Post Office building located at Canal and Harrison Streets in Chicago. Seco subcontracted electrical work to third-party defendant Avondale. Since Avondale was to remove certain electrical fixtures from the ceilings to afford space for new conveyors, scaffolding was brought to the jobsite. The sections of scaffolding consisted of tubular steel about 5 or 6 feet in height. They were to be stacked one on top of the other to the desired height. The lower part of the upper section is wider than the upper part of the lower section, so that one section can be inserted into another. There are holes through which pins are inserted. These pins consist of 4-inch lengths of metal ½ inch in diameter hinged in the center with a head

16

at one end. The plaintiff's foreman had ordered extra safety pins which never arrived.

Plaintiff and a fellow worker, Kenneth Quick, brought two sections of scaffolding from the first floor to the fifth floor on the evening of Sept. 11 or the morning of Sept. 12, 1959. The ownership of this scaffold was never determined. On Sept. 12 plaintiff and Quick started to erect the scaffold to the desired height. Plaintiff testified that there was a lack of safety pins, and that, consequently, the upper and lower sections were fitted into each other but were not fastened together with the pins. Plaintiff's foreman testified that plaintiff never complained of the lack of pins, and Arthur J. Siegel, d/b/a Seco Construction Company, testified that he never inspected the scaffolding on the jobsite. During the process of erection of the scaffold, the plaintiff scaled the scaffold, having one foot on the top bar of the lower section and holding onto the top bar of the upper section. When plaintiff reached out with his other hand to grab a plank which Quick was pushing over to him, the scaffold moved erratically and plaintiff fell to the floor, sustaining the injuries complained of.

Plaintiff then filed this action against Seco who instituted the third-party action against Avondale.

Plaintiff contends that the trial court erred in granting Seco a new trial in the primary cause. In support of this position plaintiff takes exception with the reasons given by the trial judge in granting the new trial and contends:

(1) The clauses of the Seco-General Services Administration contract were properly admitted into evidence and limited to the issue of "control" under the Structural Work Act.

(2) Even if the above were not so, the contract had wider applicability and could have been used to

17

show Seco's duty under the common-law negligence count.

(3) There was no reason to assume, as did the trial judge, that Ashurst, Seco's superintendent, would have testified differently if present in court.

(4) There was sufficient medical evidence to give the jury a reasonable basis for calculation of damages.

In reference to plaintiff's first point, Seco maintains that the Seco-Avondale subcontract and not the GSA contract was germane in showing "control." We find no merit in Seco's contention in view of Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965) and Dinschel v. United States Gypsum Co., 83 Ill App2d 466, 228 NE2d 106 (1967).

Seco next contends that many of the provisions of the GSA contract admitted into evidence did not bear on the issue of "control," but imposed certain contractual obligations on Seco, the benefit of which inured to GSA and not third parties. Seco further contends that these provisions prejudiced their defense of the case.

In Larson v. Commonwealth Edison Co., supra, the court was asked to rule on jury instructions in an action based on the Structural Work Act. The court stated at page 321:

> "While it may be conceded that some of the decisions in the jurisdiction involving the Scaffold Act appear to have equated 'having charge' with 'supervision and control' in varying degrees, it is our opinion the language of the statute, and the legislative intent it reflects, do not permit the conclusion that the terms are the inflexible and unbending legal equivalent of the other. The term 'having charge of' is a generic term of broad import, and although it may include supervision and control, it is not confined to it."

18

██ ██ Therefore, the issue of whether the proffered clauses show supervision and control, is not central. The primary issue is whether, given the legislative intent evinced by the statute, the clauses relate to the question of Seco's relationship with the job, and whether Seco could be deemed to have been "in charge of" the jobsite. The standard for measuring the admissibility of evidence is, therefore, broader than that suggested by Seco. It encompasses all rights and duties of the defendant on the job, which do not unduly prejudice his case or cloud the issues, to the end that a proper determination of the relationship may be achieved.

██ We find that all clauses admitted into evidence in the instant case met the standard as enunciated in Larson, supra. The fact that some of the clauses outline defendant's duties to the government in no way detracts from their usefulness in determination of the issues at hand, since the duties of a general contractor to the owner can be determinative of the issue of who was in charge of the jobsite.

Seco, however, contends that even if the clauses were properly admitted into evidence, there was a failure to limit them to the issues of the Structural Work Act.

Ill Rev Stats, c 110, § 67(3) (1967), provides in part:

"No party may raise on appeal the failure to give an instruction unless he shall have tendered it."

██ Defendant tendered only one instruction on limitation of the evidence. The instruction was accepted and given to the jury. Seco contends that it often asked the judge to give further limiting instructions which is evident from the record. The trial judge, however, decided to postpone ruling on further instructions until after final argument. After final argument, however, defendant failed to tender any further instructions. Defendant

19

cannot now assert as error failure to limit where the trial court was not tendered instructions.

Plaintiff's second point need not be discussed having so held on his first contention.

██ Plaintiff's third point of disagreement with the trial court is over the testimony of Ashurst, Seco's superintendent. In granting a new trial to Seco the trial court expressed the feeling that Ashurst's testimony, "was so loose . . . because this was a deposition, not a courtroom. . . ." Seco contends that it was only upon a strong suggestion from the trial judge that the deposition was taken instead of requiring Ashurst to testify in court. Seco, however, did not object to his procedure at any time. Ashurst was Seco's witness and if they wanted his testimony in court, it was their prerogative.

We further agree with plaintiff in that there was no reason to assume Ashurst's testimony would have been different if given in the presence of the jury.

Plaintiff's fourth point is that there was sufficient medical testimony to support the verdict. Defendant, however, states that the trial court was correct in questioning an alleged gap of medical evidence in granting Seco a new trial.

██ The alleged gap of medical evidence covers the period of October, 1959, to April, 1963, when plaintiff returned to work. Prior medical evidence shows that after O'Leary sustained the leg injuries on Sept. 12, 1958, he received treatment until July, 1959. He then suffered an ulcer condition causing him to lose weight. There was medical testimony as to the relationship of the ulcer condition and the accident. The treatment of the ulcer continued until late 1959 or early 1960, when plaintiff's weight had deteriorated to 92 pounds.

Seco, however, maintains that since there was no medical testimony as to his ability to work from late 1959 or early 1960 to April, 1963, the plaintiff failed to prove his

case for lost wages and pain and suffering for this period of time.

We disagree. The evidence showed that the plaintiff was in a run-down condition after succumbing to the ulcer condition and that when he did return to work in 1963 his tasks were limited. The defendant offered no evidence to contradict the statements by the plaintiff as to his inability to work during this period. From these facts we cannot consider there to be a lack of evidence as to plaintiff's condition. The jury could well have concluded that the facts showed a physical inability to work during the period in question.

Therefore, we believe the trial court erred in granting the defendant a new trial in the primary case.

The next issue is whether Count II of plaintiff's amended complaint alleging common-law negligence is barred by the Statute of Limitations, Ill Rev Stats, c 83, § 15 (1967), wherein all actions seeking damages for personal injuries must be filed within two years of the accrual of the cause.

The injury was sustained on Sept. 12, 1958. The original one-count complaint alleging violation of the Structural Work Act was filed on June 9, 1960. The amended two-count complaint which added a second count in common negligence was filed May 16, 1966.

Seco maintains that Count II is barred by the Statute of Limitations, supra, more than two years having run since accrual of the action and filing of the complaint.

O'Leary asserts that Count II of the amended complaint dates back to the filing of the original complaint under section 46(2) of the Civil Practice Act (Ill Rev Stats, c 110, § 46(2)).

Section 46(2) provides:

"The cause of action, cross demand or defense set up in any amended pleading shall not be barred by

lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross demand interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving as aforesaid the cause of action, cross demand, or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended."

Subsection (2) of section 46 must be read in conjunction with subsection (1), since the former merely conditions the latter.

Section 46(1) provides:

"At any time before final judgment amendments may be allowed on just and reasonable terms, introducing any party who ought to have been joined as plaintiff or defendant, discontinuing as to any plaintiff or defendant, changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either of form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be

brought or the defendant to make a defense or assert a cross demand."

Subsection (1) expressly authorizes an amendment setting up new causes of action. Subsection (2) provides that causes of action arising from the same occurrence in the amended complaint shall not be barred by lapse of time, where the original pleading was filed in apt time. ██ Since the cornerstone of section 46 is the "same occurrence," construed by judicial opinion to mean "specified conduct," * we are of the opinion that section 46(2) is operative in the present case, and the amended complaint relates back under the statute. The question of conduct required under the separate counts in no way prejudices Seco's defense of the case, since the "specified conduct" arises from the facts originally alleged, such facts presenting sufficient notice as to the nature of liability asserted. We conclude, therefore, that the trial court properly denied Seco's motion to strike Count II of the amended complaint.

Seco next maintains that the trial court erred in denying its motion for a judgment notwithstanding the verdict in the primary cause. Seco contends that the plaintiff failed to prove a wilful violation and proximate cause under Count I, and further, that O'Leary failed to show duty, negligent conduct, proximate cause and freedom from contributory negligence under Count II.

██ Under the doctrine of Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967), a movant is entitled to a directed verdict or a judgment notwithstanding the verdict, when "all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict could stand."

---

* Geneva Const. Co. v. Martin Transfer & Storage Co., 4 Ill2d 273, 122 NE2d 540 (1954).

23

There is evidence tending to show that the scaffolding in question had been on the jobsite for at least two months prior to the accident and that during that period Siegel, d/b/a Seco, and his foreman Ashurst had failed to inspect the equipment on the job. In answer to a question of whether he inspected the scaffold or not, Ashurst testified, "No. Actually, a scaffold, all it is is two pieces of iron. There is nothing to go wrong with it." If they had inspected, the evidence showed that they would have discovered a general shortage of safety pins. The pins were allegedly not only used to prevent the upper section from rising, but also to stabilize the scaffold. Testimony showed that the scaffold moved erratically as plaintiff scaled it, just prior to his fall.

Viewing these and other facts in their aspect most favorable to O'Leary leads us to the conclusion that a guilty verdict on Count I could properly stand. The jury could have reasonably concluded that Seco committed a wilful violation of the statute by having constructive notice of the lack of pins on the jobsite. There is also sufficient evidence to reasonably conclude that the lack of pins contributed to the instability of the scaffolding proximately causing O'Leary's injuries.

Under Count II, however, the plaintiff failed to show freedom from contributory negligence. Since plaintiff was one of the workers who erected the scaffold, he knew of the lack of safety pins and the resulting hazards. Having a duty of due care to his person, plaintiff breached that duty as a matter of law by scaling a scaffold he knew to be unsafe.

Under section 68 of the Civil Practice Act a general verdict is not to be set aside where one of the grounds is sufficient, unless a motion to withdraw the issue was made. (Ill Rev Stats, c 110, § 68(4) (1965).)

Therefore, the trial court properly denied Seco's motion for a judgment notwithstanding the verdict in the

primary cause, Count I constituting a sufficient ground to sustain the general verdict.

Seco next contends that the trial court erred in refusing to grant a judgment notwithstanding the verdict in the third-party action. In support of this contention Seco asserts that it was exposed to liability under the Structural Work Act by the acts of the third-party defendant Avondale and that in similar situations the courts have allowed indemnification; citing Sack v. Arcole Midwest Corp., 33 Ill App2d 344, 179 NE2d 441 (1961). Seco further asserts that under the doctrine of Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967) it is entitled to a judgment notwithstanding the verdict in its indemnification action against Avondale.

Third-party defendant, however, disagrees with the application of Sack, supra, asserting that since it was decided before Larson v. Commonwealth Edison Co., 33 Ill2d 316, 211 NE2d 247 (1965) and Kobus v. Formfit Co., 35 Ill2d 533, 221 NE2d 633 (1966), it is not dispositive of the issue of indemnification under the Structural Work Act.

In Sack, supra, the court granted a directed verdict to the plaintiff's general contractor in an action for indemnification against the subcontractor for damages arising out of a Structural Work Act case under the theory of active-passive negligence. Avondale, however, contends that since both Larson, supra, and Kobus, supra, stand for the proposition that liability under the Structural Work Act extends beyond those having immediate control of the instrumentality to those who are in charge of the jobsite, that the courts have, thereby, evinced an intent to disallow a general contractor's indemnification from the subcontractor where the general contractor was in charge of the job.

██ We believe Avondale's reasoning leads to a false application of both Larson, supra, and Kobus, supra,

25

cases. The thrust of both cases is to give force and effect to the duty placed upon one in charge of the job to refrain from wilful conduct under the Act by making him liable to the injured party. The doctrine of active-passive negligence is however, unaffected by these decisions.

In Rovekamp v. Central Const. Co., 45 Ill App2d 441, 195 NE2d 756 (1964), noted approvingly in Miller v. De Witt, 37 Ill2d 273, 226 NE2d 630 (1967) the court stated at page 449:

> "Although liability imposed by the (Structural Work) Act does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is more culpable, a party who supervises and co-ordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent whose dereliction from duty brought about plaintiff's injury."

 Therefore, for the above reasons we deem Sack, supra, dispositive of the question of indemnification under the Structural Work Act and hold that the trial court erred in not granting Seco a judgment notwithstanding the verdict in view of Pedrick, supra.

For the foregoing reasons, the order of the trial court granting Seco a new trial in the primary cause is reversed and remanded with directions to enter judgment in the amount of $75,000 in favor of O'Leary and against Seco. The order granting a new trial in the third-

party action is reversed and remanded with directions to enter judgment in the same amount in favor of Seco and against Avondale.

Reversed and remanded with directions.

DRUCKER and ENGLISH, JJ., concur.