Angelo Isabelli, Plaintiff-Appellee, *v.* Cowles Chemical Company, Defendant-Appellant, and Third-Party Plaintiff-Appellant—(Martin Marietta Corporation, a/k/a and/or d/b/a Marietta Concrete Division of American Marietta Company, Third-Party Defendant-Appellee.)

(No. 54609;

First District—September 19, 1972.

*Rehearing denied October 20, 1972.*

890

892

Harry I. Parsons, of Chicago, (Robert Jay Nye, of Nye and Nye, of counsel,) for appellant.

Horwitz, Anesi, Ozmon & Associates, Ltd., of Chicago, (Nat P. Ozmon and Dario A. Garibaldi, of counsel,) for plaintiff-appellee.

Lord, Bissell & Brook, of Chicago, (Stephen A. Milwid, R. R. McMahan, and Hugh C. Griffin, of counsel,) for third-party defendant-appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Angelo Isabelli (plaintiff) brought this action against Cowles Chemical Company (Cowles) for alleged violation of the Structural Work Act. (Ill. Rev. Stat. 1971, ch. 48, pars. 60—69.) Cowles filed a third-party action against Martin Marietta Corporation (Marietta). The third-party complaint sought indemnity from Marietta on grounds of implied indemnity and active negligence. The cause was submitted to a jury which returned a general verdict in favor of plaintiff and against Cowles in the primary action and assessed damages. In the third-party action, the jury returned a general verdict in favor of Cowles and against Marietta for the full amount of the damages. Also, in the third-party action, two special interrogatories were submitted to the jury. The jury answered affirmatively that they found from the evidence that there was active misconduct on the part of Marietta that constituted a wilful violation of the Structural Work Act and that was the proximate cause of injury to plaintiff. The jury answered the other special interrogatory negatively and found from the evidence that there was no active misconduct by Cowles that constituted a wilful violation of the statute and that was also the proximate cause of the injury to plaintiff.

Lengthy post-trial motions and amended motions were filed by Cowles in the original action and by Marietta in the third-party action. The

trial court denied the post-trial motions of Cowles, as amended, in the original action. In the third-party action, the court granted the motion of Marietta, as amended, and accordingly set aside the negative answer of the jury to the special interrogatory finding no active misconduct by Cowles. The court also entered judgment in favor of Marietta and against Cowles on the third-party complaint notwithstanding the general verdict in favor of Cowles against Marietta. Cowles appeals.

In the principal case, Cowles contends: (1) that plaintiff failed to establish violation of the Structural Work Act by Cowles since Cowles was not in charge of the work and also because plaintiff's injuries were not proximately caused by any breach of duty by Cowles; (2) that inadmissible hearsay testimony was permitted and (3) that judgment against Cowles was improper because the general verdict was inconsistent with the special findings of the jury. As regards the third-party action, Cowles contends that the judgment by the court notwithstanding the verdict was erroneous because: (1) the special interrogatory was consistent with the general verdict in the third-party action and also (2) that Marietta was the active tort-feasor and breached its duty to perform is contract work properly. In the principal case, plaintiff takes precisely the contrary position and seeks to uphold the verdict in his favor. In the third-party action, Marietta seeks to justify and support the action of the trial judge in granting judgment in its favor. In addition, Marietta claims that the trial court erred in refusing an instruction tendered by it. A statement of the pertinent facts is essential.

During 1961, Cowles was engaged in a large construction project involving erection of many structures. Cowles entered into a written agreement with Marietta for installation upon the premises of two industrial silos. They were both 26 feet in diameter and the circumference of each consisted of prefabricated cement staves. A circular scaffold was used as the walls were erected. This was a round platform within the structure that could be manually raised and lowered on a center pole by means of two chains, referred to as "come-alongs", running from the outer edges of the scaffold to the pole. The pole itself was augmented in height as the work progressed by use of sections of metal pipe seven feet in length. Each was inserted into a lower section and held in place by a bolt which fitted through both. The top of each individual section was fitted with two hooks from which the come-alongs ran to the outer edge of the scaffold. There were holes at intervals along these pipes. When the scaffold was raised to a new position, it was held there by inserting a bolt or pin through the holes in both sections. This platform enabled workmen to reach the outer walls for construction purposes. To

raise or lower the scaffold as required, two men always worked together with one on each side of the platform.

The occurrence at issue took place on June 1, 1961. The first silo had been finished and the walls of the second one had been built to a height of about 50 feet. Plaintiff and two other employees of Marietta were to work on plastering the interior wall. Two men were up on the platform or scaffold approximately 50 feet above the ground. Plaintiff was engaged in providing plastering material for them, which they raised with a rope. These three employees had not worked on the silo for one or two days previously because iron workers had been engaged in erecting the roof joists which consisted of iron bars running from the center to the circumference like spokes on a wheel. It is clear that these iron workers were not employd by Marietta. There is testimony in the record adduced by Marietta, and contested by Cowles as hearsay, that these iron workers were employed by Cowles.

When the two Marietta employees climbed up to the scaffold platform, they found that before the iron workers left they had raised the scaffold as far as possible on the center pole. This position was too high for them to do the plastering. The platform was then resting on a safety pin so that it could not be lowered until the pin was removed. The pin could not be removed until the platform was slightly raised so that its weight no longer rested on the pin. However, the platform was already at the top of the center pole so that the chains or come-alongs could no longer be attached thereto. Therefore, the two Marietta employees hooked the chains on to the roof joists and proceeded to move the platform up so that they could remove the safety pin. There was evidence that this was customary when required in this type of situation. However, as soon as the safety pin was removed, two of the bar joists came loose from their center anchorage. The chains fell off and the platform fell rapidly down the center pole. Plaintiff saw this occur and attempted to take evasive action by leaving from a small opening at the bottom of the silo but he was struck by the platform and injured.

There is expert evidence in the record that this type of scaffold is in general use in construction of this type, primarily where silos are involved. It is sometimes described as an umbrella scaffold or a gravity scaffold. There was an accepted safety procedure in connection with the use of this apparatus to permit the bolts or pins to remain in position at intervals along the length of the entire center pipe. The apertures in these pipes were approximately two feet apart. Thus, there would be a series of safety pins which should operate to prevent the fall of the platform. These pins had not been used through the entire performance of the work in question and the platform had merely been held by the

chains and resting upon the one single pin which was shifted toward the top as the platform was lifted.

■■ The initial question here is whether the evidence showed a violation of the Structural Work Act by Cowles. In its brief, Cowles breaks down this issue into seven component elements and urges that there is a complete lack of proof as to three of these elements. We cannot accept this theory. We find that the first four elements of this cause of action, as stated by Cowles, have been proved virtually without contrary evidence. The proof shows first that plaintiff was engaged in a structural activity as defined in the statute, namely, "erection". This activity was certainly performed with reference to a "structure". The proof shows use of a scaffold or mechanical contrivance. The evidence is uncontradicted that there was some defect in the construction or operation of this device. The argument advanced by Cowles with reference to the stated fifth element of whether plaintiff's injuries were proximately caused by this operation is not pertinent here. Cowles urges that plaintiff's injuries were proximately caused by the conduct of employees of Marietta, not by those of Cowles. This contention will be given full consideration when we later consider the issues with reference to the third-party complaint pertaining to the relationship between Cowles and Marietta. It is sufficient to state here that plaintiff's injuries were caused by operation of the device and by nothing else. The question of primary and active fault in the construction or operation thereof must be reserved for later consideration.

■■■ The two remaining issues are whether Cowles had "charge of" the work and whether the violations of the statute were wilful. Cowles argues that it was not in charge of the work because it had no actual control over the details thereof. In effect, Cowles contends that the proof fails to show that it had direct responsibility for the scaffold in question. We agree with the response by plaintiff that this argument has been consistently rejected by the courts of Illinois. The Structural Work Act does not mean that "* * * only the person or persons who actually erect a scaffold are subject to duty and liability * * *" thereunder. (*Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 320, 211 N.E.2d 247.) See also the recent case of *Bruen v. Burton Auto*, 130 Ill. App.2d 477, 481, 266 N.E.2d 176, where this court, citing *Larson* and other cases, held that imposition of "* * * liability under the Structural Work Act cannot rest alone on the erection, control, or ownership of what causes the injury." As to whether Cowles was in charge of the work, it is basic that the Structural Work Act is not concerned with retention or exercise of control and supervision but imposes a standard of liability predicated upon "* * * having charge of * * *." (Ill. Rev.

Stat. 1971, ch. 48, par. 69.) In *Larson*, the Supreme Court held that having charge of may include supervision and control but is not limited to that concept.

■■ With these thoughts in mind, let us focus upon the evidence concerning the relationship of Cowles to this work. Cowles cites and depends upon various provisions of the construction contract between Marietta and itself. This includes covenants by Marietta that the work would be free from defective workmanship or material; that Marietta was to furnish an industrial silo erection crew and that Marietta would comply with local labor laws. These arguments merit consideration in disposition of the third-party claim. As above pointed out, however, they cannot by themselves answer the question as to whether or not Cowles was in charge of the work. Cowles also urges that the testimony of Robert Jackson, a Cowles employee, reflects that it was not in charge of the work. Cowles stresses the testimony of Jackson that Marietta furnished all of the materials, equipment and scaffolding for the job including even the bar joists for the roof and that he never made any suggestions in construction of the silos.

■■ There is, however, a mass of evidence tending to prove that Cowles was in charge. The witness Jackson was referred to as "engineer in charge of construction". Cowles approved all plans and specifications. Cowles gave directions to the various subcontractors including Marietta. Cowles was, in effect, a general contractor. Employees of Cowles had actually manipulated or used the scaffold the day before the injury. It was the duty of Jackson as a Cowles employee to make various inspections of the job which he admitted he failed to perform. Cowles had authority to make changes and even had the right to stop the work. This last stated condition has large significance in determining that Cowles had charge of the work within the meaning of the statute. *Miller v. De Witt*, 37 Ill.2d 273, 286, 226 N.E.2d 630.

■■ The important aspect of this analysis, however, is that the determination as to whether any person is in charge of any particular project is an issue of fact for determination by the jury. This principle has been firmly established by many of the frequently cited cases in this field. Determination of who is in charge is a classic example of an issue of fact within the province of the jury. (*Kobus v. Formfit Co.*, 35 Ill.2d 533, 537-538, 221 N.E.2d 633; *Gannon v. Chicago, Minneapolis, St. Paul & Pacific Ry. Co.*, 22 Ill.2d 305, 323, 175 N.E.2d 785.) Whether or not a person is in charge of the work has been well described as "the ultimate factual question" in cases arising under the Structural Work Act. See *Jones v. S. S. & E. Corp.*, 112 Ill.App.2d 79, at pages 92 and 93

with particular reference to the citation from *Larson v. Commonwealth Edison Co.*, 33 Ill.2d 316, 211 N.E.2d 247.

■■■ The last element of liability analyzed by Cowles fits within the same category. Cowles contends that the proof fails to show it guilty of a wilful violation of the statute. Our courts have consistently held that the word "wilful" as used in this context is quite different from the familiar phrase "wilful and wanton". The essence of the Structural Work Act is not to be found within the concept of knowing or intentional misconduct or even that of reckless disregard. Liability exists where the existence of dangerous conditions could have been ascertained by the exercise of reasonable care. See *Jones v. S. S. & E. Corp.*, 112 Ill.App.2d 79, 94, 250 N.E.2d 829; also *Pantaleo v. Gamm*, 106 Ill.App.2d 116, 125, 245 N.E.2d 618.

■■■ Whether or not the defective use and operation of this scaffold were conditions that should have been discovered by the exercise of reasonable care was a question of fact for the jury. There is evidence that Cowles had authority to inspect the work and even to stop it but that this authority was not actually exercised. Under these circumstances, the jury was justified in arriving at its general verdict of liability in favor of plaintiff and against Cowles. At best, these arguments of Cowles, concerning "in charge of" and "wilful", serve merely to create a situation upon which reasonable men might differ. Since the testimony is conflicting and since we cannot say that the verdict is contrary to the manifest weight of the evidence, we may not disturb the general verdict in favor of plaintiff and against Cowles. *Napier v. Di Cosola*, 126 Ill.App.2d 324, 261 N.E.2d 779, and authorities therein cited.

■■ Cowles next urges trial error in admission of hearsay evidence over its timely objection. Lawrence Offenberger had been employed by Marietta for approximately 14 years and had worked on some 300 silos. He had been working at this site for approximately three or four weeks. On direct examination by counsel for Marietta, he was asked who had erected the bar joists upon which the roof was to rest. The first point raised by Cowles is that the question put to the witness contained the phrase, "to your knowledge". Therefore, it is urged that the answer that the iron workers who erected these joists were furnished by Cowles was not within the personal knowledge of the witness.

Cleary, Handbook of Illinois Evidence, Second Edition, defines hearsay as "* * * an extrajudicial statement offered to prove the truth of what is asserted in the statement." (Cleary, Section 17.1.) Wigmore On Evidence is cited as the source of this definition. We have carefully read the entire testimony of this witness and we cannot conclude that it should

be proscribed as hearsay. In fact, use of the phrase "to your knowledge" would appear to be an attempt to limit the response of the witness to matters within his personal knowledge. We note also that this evidence was not adduced by plaintiff as part of his case but by Marietta. The identity of the person who installed the joists has no materiality or effect upon plaintiff's claim. We find no trial error in this regard.

■■■ Cowles next contends that the general verdict in favor of plaintiff and against Cowles is inconsistent with the two answers to special interrogatories above described which found that there was no active misconduct by Cowles which constituted a wilful violation of the statute and that there was active misconduct by Marietta which did constitute such violation. This contention has no bearing upon the propriety of the general verdict. It is well settled that liability under the Structural Work Act can result from a passive violation as well as from affirmative activity. (*Miller v. De Witt*, 37 Ill.2d 273, 290-291, 226 N.E.2d 630. See also *Sleck v. Butler Bros.*, 53 Ill.App.2d 7, 15, 202 N.E.2d 64.) Furthermore, it is clear from this record that the two special interrogatories had no bearing upon the issues between plaintiff and Cowles. The concept of "active misconduct" used by them is not material in structural work cases. They were submitted to the jury in connection with the issues raised in the third-party litigation by Cowles against Marietta. There was also a general verdict on these issues returned by the jury in favor of Cowles. That verdict had no connection with the general verdict in the original case.

The judgment entered on the general verdict in favor of plaintiff and against Cowles will, therefore, be affirmed. We proceed now with consideration of the action of the trial court in setting aside the answer to the special interrogatory which found no active misconduct by Cowles, and also the general verdict in favor of Cowles against Marietta and which entered judgment in favor of Marietta and against Cowles notwithstanding the verdict.

The evidence here shows that employees of Cowles raised the circular scaffold so close to the bar joists that the supporting chains could not be fastened to the center pole in the usual manner. Employees of Marietta then proceeded to attach the chains to the bar joists. This procedure is described in the record as usual in this type of situation. It will be remembered that it was necessary to raise the scaffold slightly to permit removal of the supporting pin. The evidence also showed that the customary manner of using a circular scaffold of this type is to leave safety pins inserted at intervals from the ground up to the scaffold. It is self-evident that presence of these pins could have averted the occurrence.

❷ 19-21 It is firmly settled that "* * * while Illinois does not allow

contribution among joint tort-feasors, it does allow a passively negligent tort-feasor to obtain indemnification from an actively negligent tort-feasor." (*Miller v. De Witt*, 37 Ill.2d 273, 289-290, 226 N.E.2d 630.) This doctrine is applied in structural work cases where negligence is not an element in the original claim. (*O'Leary v. Siegel*, 120 Ill.App.2d 12, 26, 256 N.E.2d 127, quoting from *Rovekamp v. Central Construction Co.*, 45 Ill.App.2d 441, 449, 195 N.E.2d 756.) The right to indemnification exists as a matter of law and because of the relationship of the parties to the transaction. The more recent cases seem to have turned from the theory of so-called "implied obligation" to a theory of shifting culpability from the party whose conduct is passive and secondary to the party whose conduct is active and primary. *Mullins v. Crystal Lake Park Dist.*, 129 Ill.App.2d 228, 231, 262 N.E.2d 622.

It must be remembered that the evidence here shows that Cowles was the general contractor and that Marietta was a sub-contractor. Under the terms of the written agreement between these parties, Marietta furnished and operated the scaffold which was the instrumentality that was the effective cause of the injury to plaintiff. Cowles did not participate in the actual use or operation of the scaffold. Under these circumstances, it may well be urged that the negligence of Marietta was active and primary. See *Jones v. McDougal-Hartmann Co.*, 115 Ill.App.2d 403, 408, 253 N.E.2d 581 citing *Sack v. Arcole Midwest Corp.*, 33 Ill.App.2d 344, 179 N.E.2d 441.

In the case at bar, at the very best from Marietta's point of view, determination of the active-passive question in the roles played by Cowles and Marietta was an issue of fact for the trial court. It appears to us that the evidence in this regard is conflicting and arguable. (See *Topel v. Porter*, 95 Ill.App.2d 315, 330, 237 N.E.2d 711.) Meritorious arguments can be advanced on both sides. Under these circumstances, as pointed out with reference to the factual questions in the original case, determination of the issue rested exclusively within the province of the jury. In our opinion, the general verdict in favor of Cowles and against Marietta was not contrary to the manifest weight of the evidence. Similarly, the determinations reached by the jury in response to the special interrogatories were not contrary to the manifest weight of the evidence. In this type of situation, the post-trial motions of Marietta should have been denied. This is not a case in which all of the evidence when viewed in its aspect most favorable to Cowles so overwhelmingly favors Marietta that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, 510, 229 N.E.2d 504.

Marietta tendered its Instruction No. 7 to the effect that if the jury found that there was a wilful violation of the Structural Work Act

by Cowles "of the same degre or character, or was greater in degree or character than" the violation of Marietta that their verdict must be for Marietta. The trial court properly rejected this instruction. It would have served to confuse and confound the issues in the principal case with those in the third-party action. The matter of wilful violation of the Structural Work Act was material only in the principal litigation between plaintiff and Cowles. Violation of the Act had no bearing upon the third-party action. Under the authorities above cited, the issue in the third-party action was whose culpability was active and primary and whose was passive and secondary. This tendered instruction was properly rejected by the trial court.

The judgment in favor of plaintiff and against Cowles in the principal action is affirmed. The judgment notwithstanding the verdicts in the third-party action in favor of Marietta and against Cowles is reversed and the cause is remanded to the trial court with directions that judgment be entered upon the verdict in favor of Cowles and against Marietta.

Judgment affirmed in part; judgment reversed in part; cause remanded to trial court with directions.

BURKE and LYONS, JJ., concur.