CLARENCE MOORE, Plaintiff-Appellee, *v.* CLEARING INDUSTRIAL DISTRICT, INC., Defendant-Appellant and Third-Party Plaintiff-Appellee.— (HANSEN & HEMPEL, INC., Third-Party Defendant-Appellant.)

First District (1st Division)   No. 77-67

Opinion filed September 11, 1978.

392

Lord, Bissell & Brook, of Chicago, for appellant Clearing Industrial District, Inc.

Mark A. Braun, of Klohr, Braun, Lynch & Smith, of Chicago, for appellant Hansen & Hempel, Inc.

Silberman & Gershon, Ltd., and Bloch & Bloch, both of Chicago (Jules S. Gershon, Richard J. Hollander, and Norman L. Bloch, of counsel), for appellee.

Mr. JUSTICE BUCKLEY delivered the opinion of the court:

On November 24, 1971, plaintiff-appellee Clarence Moore suffered a back injury when he fell from a scaffold used for masonry work on a wall being added to an existing building.

Subsequently, Moore filed an action for damages in the circuit court of Cook County against the owner of that construction, Clearing Industrial District, Inc. (hereafter Clearing), on the basis of the Illinois Structural Work Act, which creates a right of action for injuries occasioned by wilful violations of that act against any owner or contractor having charge of the construction where the injury occurred (Ill. Rev. Stat. 1975, ch. 48, pars. 60, 69). Clearing in turn brought a third-party action against Moore's employer, Hansen & Hempel, Inc. (hereafter Hansen), seeking indemnification under an active-passive joint negligence theory. See *Moroni v. Intrusion-Prepakt, Inc.* (1960), 24 Ill. App. 2d 534, 165 N.E.2d 316.

The two actions were tried jointly, with the only evidence presented being that produced by Moore. At the close of evidence, on motions for directed verdicts by Clearing, the circuit court reserved ruling as to Moore's action but entered a contingent directed verdict for Clearing against Hansen. The case was submitted to the jury solely on the issue of

Clearing's liability to Moore and judgment was entered for Moore for $275,000. Thereafter, the circuit court entered a directed verdict for a like sum against Hansen on Clearing's indemnification action.

On appeal, Hansen joins Clearing in urging error in the circuit court's failure to enter a directed verdict for Clearing on Moore's action. Hansen itself urges error in the directed verdict against it on Clearing's action.

For the reasons stated below, we find no error in the judgments entered in the circuit court.

The uncontradicted evidence presented at trial included the following points:

(1) Clearing owned the site where Moore was injured and had hired Moore's employer, Hansen, to do masonry work.

(2) The scaffold from which Moore fell was 12 to 14 feet above the ground. It was 100 feet long, but did not extend the full width of the work area at the end where Moore was working. Its end was not closed by a guardrail.

(3) It is common practice to use guardrails on scaffolds when they are at a height of about 12 feet or more. Federal Occupation Safety and Health Administration regulations call for guardrails on all scaffolds over 10 feet above ground. A guardrail could have been installed in about 10 minutes at a cost of about ten dollars.

(4) Moore fell when, while working backwards laying brick, he stepped on a piece of brick or a block he had positioned to warn him he was near the end of the scaffold, then lost his balance, and the plank on which he was standing shifted. There was testimony that bricklayers commonly worked forward and backward to avoid unnecessary movement.

(5) The scaffold was provided by Hansen.

(6) Hansen's contract required it to take all necessary precautions for the safety of employees, including complying with Federal, State and local safety laws. It also provided that Clearing could make good any deficiency in Hansen's performance of its duties under the contract, and in the event of Hansen's persistently disregarding laws or committing any substantial violation of any provision of the contract, Clearing could, on three days' written notice, terminate Hansen's employment.

(7) In its contract with Hansen, Clearing made extremely detailed specifications regarding not only materials to be used but also the way they were to be prepared, cleaned and protected, and reserved the right to modify instructions.

(8) One Clearing employee was regularly in contact with Hansen's supervisors and made frequent inspections of the worksite. However, he did not directly contact Hansen's nonsupervisory personnel and did not issue any orders directly aimed at safety practices.

(9) There was no evidence that Clearing's inspector had seen the scaffold prior to Moore's fall.

Clearing and Hansen argue first that this evidence did not show that Clearing had charge of the work nor that Clearing was guilty of a wilful violation, two requirements for liability under the Structural Work Act, so that a directed verdict against Moore should have been granted. For this contention to be accepted, all of the evidence, viewed in its aspect most favorable to Moore would so overwhelmingly favor Clearing that no contrary verdict based on that evidence could ever stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

In order to determine whether this evidence supports a conclusion that Clearing had charge of the work in which Moore was injured, it is necessary to consider the meaning of the words "having charge of," as used in the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 69). This task is facilitated by reference to an Illinois Supreme Court decision issued during the pendency of this appeal, *Emberton v. State Farm Mutual Automobile Insurance Co.* (1978), 71 Ill. 2d 111, 373 N.E.2d 1348.

In *Emberton*, the court reviewed major decisions applying these words before critiquing one of its own recent decisions and applying those words to the case at hand. It noted that a plaintiff in a Structural Work Act case is not necessarily entitled to a verdict simply because the defendant supervised the work (*Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 175 N.E.2d 785). On the other hand, a defendant is not entitled to a directed verdict merely because the evidence shows the defendant did not supervise or control the work, because "having charge of" does not necessarily mean more than to care for. *People v. Gould* (1931), 345 Ill. 288, 178 N.E. 133.

The *Emberton* court next examined *McGovern v. Standish* (1976), 65 Ill. 2d 54, 357 N.E.2d 1134, which reversed a verdict against an architect who had contractually agreed to supervise work at which an injury had occurred. *McGovern* had emphasized that the evidence did not show that the defendant had the right to control or direct the manner or methods for the construction, and that an architect's duties are normally limited to ensuring that the finished building conforms to plans and specifications. Accordingly, *McGovern* indicates that a showing of a right to supervise is not the same as a showing of a right to control, and that there must be some evidence of a right to control for a verdict against a defendant in a Structural Work Act case to stand.

However, the *Emberton* court stated that evidence may be sufficient to show that a defendant had charge of construction by simply showing a sufficiently direct connection between the defendant and the work, and this may be shown by inspections or other activities as well as a right to

control. The *Emberton* court concluded that, to the extent that *McGovern* means that liability may be founded on a showing that the defendant had charge of the work either by exercising control or having a right to control, it is valid.

This critique of *McGovern* was somewhat clarified by the court's handling of the facts before it in *Emberton*. Noting that it is possible for more than one party to have charge of a construction project, the court assessed State Farm's involvement in the construction work which was the subject of the *Emberton* case. State Farm's employees had not exercised or retained a right of control over the manner and methods of that work, but they had made frequent inspections and work order changes. The court observed that, although mere ownership was not sufficient, a showing of control or a right of control was not essential to establish a sufficiently direct connection for an owner to be liable under the Structural Work Act. It concluded that these facts were sufficient for a jury to find that State Farm had charge of the work.

■ Accordingly, *Emberton* establishes that a defendant is not entitled to a directed verdict if the evidence shows that the defendant made frequent inspections and made work order changes or otherwise had a sufficiently direct connection with the work, even if the defendant did not exercise or have a right to control over the work.

Turning to the evidence in the present case, it is apparent that Clearing's connection with the work was even more direct than State Farm's in *Emberton*. Clearing not only made frequent inspections and retained the right to change work orders, but also retained the right to remedy any deficiency in Hansen's performance or terminate Hansen's employment for violations of its contract, which included requirements for compliance with applicable safety laws. Clearing was obviously in a position to influence job-site safety procedures.

■ Accordingly, the evidence produced by Moore clearly meets the *Emberton* test, so that a jury verdict upon that evidence will not be disturbed.

To be liable, however, a defendant must not only have charge of the work but also must be guilty of a wilful violation of the Structural Work Act. Appellants' second basis for arguing that a verdict should have been directed in Clearing's favor is that Moore's evidence failed to establish this requirement.

Wilfulness for the purposes of the Structural Work Act may be shown by evidence that the defendant could have ascertained the existence of a dangerous condition had the defendant exercised reasonable care. *Isabelli v. Cowles Chemical Co.* (1972), 7 Ill. App. 3d 888, 289 N.E.2d 12.

The facts of the present case clearly show that the defective nature of

the scaffold in question, that is the absence of guardrails and its failure to extend the full width of the work area, could have been determined at a glance by a person on the scene. The evidence also shows that Clearing made regular inspections and was keenly aware of every stage of the work. Accordingly, Clearing could have discovered the dangerous condition of the scaffold had its inspector merely visited the site to examine progress on the wall for which the scaffold was being used. Such an examination would represent nothing more than the exercise of reasonable care because Clearing was aware that the bricklaying activities would call for the use of a scaffold at a height of 10 feet or more.

Appellants argue, however, that there was no opportunity for Clearing to learn of Moore's practice of moving backward as well as forward while laying bricks. They cite three Illinois decisions in support of their view that this factor is crucial (*Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633, *aff'd* (1975), 61 Ill. 2d 151, 355 N.E.2d 10; *Lavery v. Ridgeway House, Inc.* (1969), 117 Ill. App. 2d 176, 254 N.E.2d 117; and *Getz v. Del E. Webb Corp.* (1976), 38 Ill. App. 3d 880, 349 N.E.2d 682). The fact of those cases, however, are readily distinguishable.

In *Mundt*, the plaintiff's injury occurred when he ventured onto a newly poured floor without using adequate lighting, removed a protective covering over a hole, then fell through it. In *Lavery*, the plaintiff was injured when he hitched a ride on a cable not intended for such use and was unable to let go before his fingers were pinned against the pulley over which the cable was strung. In *Getz* the injury occurred when the plaintiff stood on a scaffold while it was being moved by his co-workers.

In each of these cases the plaintiff's own conduct was decisive and that conduct was of such short duration that it would be difficult to detect in time to prevent an injury. Moreover, in none of those cases was the condition which contributed to the plaintiff's injury in itself dangerous. It was only in connection with the plaintiffs' deliberate conduct that these conditions became dangerous.

In contrast, the scaffold in the present case was inherently dangerous. Moore's practice of backing up while laying brick was a practice known among bricklayers and was not a type of conduct of such short duration that it would not be detected in time to prevent injury.

■ Therefore, the uncontradicted evidence in this case clearly establishes that Clearing should have detected the dangerous condition here in question had it but exercised reasonable care, so that wilfulness was established for the purposes of the Structural Work Act.

■ Accordingly, appellants' arguments that it was error for the circuit court to refuse to direct a verdict for Clearing on Moore's action must fail. There was sufficient evidence that Clearing had charge of the work and

that its violation was wilful to withstand Clearing's motion for a directed verdict.

The final issue raised by this appeal is Hansen's contention that it was error for the circuit court to enter a directed verdict against it on Clearing's third-party action for indemnity.

■■ Hansen does not directly dispute the sufficiency of the evidence in this case to support a directed verdict. This is understandable because, in order to support Clearing's motion for a directed verdict as to Moore's action, Hansen argued that Clearing did not have charge of the work, and did so in part by arguing that only Hansen had charge. For example, Hansen admitted that the circuit court was correct in finding that Moore would not have been injured had the scaffold provided by Hansen been longer and equipped with a guardrail. This admission itself concedes the issue of liability under an active-passive negligence theory for indemnity. See *Nogacz v. Procter & Gamble Manufacturing Co.* (1975), 37 Ill. App. 3d 636, 347 N.E.2d 112; *O'Leary v. Siegel* (1970), 120 Ill. App. 2d 12, 256 N.E.2d 127; *Sack v. Arcole Midwest Corp.* (1961), 33 Ill. App. 2d 344, 179 N.E.2d 441.

Hansen argues instead first that the circuit court's manner of handling the motions for directed verdict at the close of the evidence in this case was improper. Hansen claims that the circuit court manifested some confusion regarding the alignment of the parties, in particular that the circuit court appeared to have been under the impression at first that Moore's action was against both Clearing and Hansen. When informed that, if Moore's action against Clearing failed, Moore would have no recourse against Hansen, the circuit court, Hansen claims, contrived to keep Moore's action against Clearing alive so that Clearing would act as a conduit for payments from Hansen to Moore.

■■ Because the jury verdict against Clearing was supported by the evidence and the directed verdict for Clearing against Hansen was proper, the fact that these verdicts together had the effect of transferring money from Hansen to Moore through Clearing does not render these verdicts improper. The conduit argument Hansen derives from language in *Gannon* has been rejected as unsound in *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.

Hansen's second argument that the circuit court's handling of the motions for directed verdict was improper is a contention that *Rovekamp v. Central Construction Co.* (1964), 45 Ill. App. 2d 441, 195 N.E.2d 756, stands for the proposition that, where a Structural Work Act case involves two actions, one against a party having charge of the construction and the other an indemnity action, if the first cause of action is submitted to the jury, the second cause of action must also be submitted to the jury. In *Rovekamp,* the appellate court reversed a trial court's dismissal of both

the original Structural Work Act cause of action and the action for indemnity by the defendant in the original action against a third party. In reinstating the original, underlying cause of action, the appellate court stated that it was necessary to reinstate the indemnity action as well because the indemnity action was sufficiently supported by the evidence to require a trial.

The proposition Hansen purports to derive from *Rovekamp* is therefore a somewhat distorted converse of the actual holding in that case. Because even a proper converse of a valid statement is not necessarily valid, Hansen's proposition is not supported by *Rovekamp*.

Nor is it supported by logic. Whereas an action for indemnity depends upon the entry of a judgment of liability against the party to be indemnified, a judgment of liability under the Structural Work Act in no way depends on the outcome of any third-party indemnity action. The facts showing that a defendant had charge of a project and was guilty of a wilful violation of the Structural Work Act are not necessarily related to the facts which characterize the relative activity or passivity of that defendant and his third-party defendant under an indemnity action. The evidence relating to one issue may be conclusive, while the facts relating to the other may be inconclusive.

■■ Accordingly, there is no merit to Hansen's contention that, because Moore's action against Clearing was submitted to the jury, Clearing's action against Hansen should also have been submitted to the jury.

Hansen's final objections to the circuit court's handling of the motions for directed verdicts are that, in granting a contingent directed verdict against Hansen, and refusing to sever the two actions, Hansen's interests were prejudiced.

Hansen argues that the contingent directed verdict prevented Hansen from addressing the jury on the indemnity issue. This argument is valid, but reveals no prejudicial effect, because the effect complained of is precisely the proper function of a directed verdict—to remove the issue from consideration of the jury. Because the jury was not charged with deciding this issue there was no reason for it to hear argument on this issue.

Hansen asserts that, by failing to sever the two causes of action, the circuit court somehow caused prejudice to Hansen. As Hansen points out, there is sometimes a danger of prejudice to a third-party defendant when both the third-party action and the original action are submitted to the same jury, but in the present case the circuit court's granting of a contingent directed verdict removed the third-party action from consideration by the jury. Accordingly, it had in this regard the same effect as severance of the causes of action would have had.

Moreover, we note that Hansen agreed to a pretrial order severing only

one issue from this case, and that such agreement constituted a waiver of any rights to severance of the third-party action.

 We, therefore, find that Hansen suffered no prejudice as a result of the circuit court's handling of the motions for directed verdicts made at the close of evidence in this case.

For these reasons, we find that the issue of Clearing's liability to Moore was properly submitted to the jury, that the granting of a directed verdict against Hansen on Clearing's action for indemnity was proper and that no prejudice to Hansen was caused by the manner in which these verdicts were rendered or judgments entered on them. Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

McGLOON and O'CONNOR, JJ., concur.