**Carmen M. Stein, Plaintiff-Appellant, v. Hugo C. Baum and Presbyterian Hospital of the City of Chicago, a Corporation, Defendants-Appellees.**

Gen. No. 51,381.

First District, Second Division.

November 22, 1967.

John J. Quan and Rathje, Kulp, Sabel and Sullivan, of Chicago (John J. Quan, of counsel), for appellant.

William P. Nolan of Pretzel, Stouffer, Nolan & Rooney, of Chicago (Joseph B. Lederleitner, of counsel), and Wildman, Harrold, Allen & Dixon, of Chicago, for appellees.

MR. JUSTICE BURKE delivered the opinion of the court.

This was a medical malpractice action brought to recover damages for injuries allegedly occasioned by the negligence of the defendants in the administration of radiation treatments. The trial court granted defendants' motions for summary judgment and plaintiff appeals.

The complaint, filed on August 12, 1960, consisted of two counts. Count I alleged that on August 21, 1955, plaintiff Carmen Stein employed defendant Dr. Hugo Baum to treat her for what Dr. Baum later diagnosed as carcinoma of the cervix. Beginning a few days later and continuing to October of 1955, Dr. Baum prescribed internal and external radiation treatments which were administered by both Dr. Baum personally and by defendant Presbyterian Hospital of the City of Chicago through its duly authorized agents in accordance with Dr. Baum's instructions. Count I further alleged that Dr. Baum negligently permitted plaintiff to receive excessive doses of radiation resulting in radiation burns; that the effects of the excessive doses of radiation first became apparent to plaintiff in January of 1956; that commencing in March of 1956 plaintiff consulted Dr. Baum concerning the condition so caused; that on each occasion of consultation thereafter, Dr. Baum "fraudulently concealed from the plaintiff the negligent acts or omissions" above referred to in that he ascribed the cause of her condition "in March of 1956, to the normal effects of radiation therapy, in May of 1956 to a colonic stricture, and in June of 1956 to radiation colitis"; and that plaintiff discovered the exis-

tence of her cause of action "on or about June [sic July] 23, 1956."

The allegations contained in Count II were substantially those contained in Count I with the further allegation that Presbyterian Hospital maintained and operated a radiology department which was involved in the radiation treatments administered to plaintiff and that the hospital negligently permitted excessive doses of radiation to be applied to plaintiff.

The answer of Dr. Baum admitted he prescribed X-ray treatments to plaintiff in the form of two insertions of radium packs and 21 X-ray treatments during the period alleged in the complaint and that the treatments were administered by himself and by the radiology department of the defendant hospital, but denied the treatments administered by the hospital were administered in accordance with his instructions. Defendant hospital in its answer admitted that it is a hospital located in Chicago and that it had a radiology department, but denied the remaining allegations of the complaint.

Plaintiff's answers to interrogatories and her testimony at a discovery deposition revealed the following facts:

Beginning in August of 1955 and continuing until October of 1955, radiation treatments were administered to plaintiff by or under the instruction of Dr. Baum at the defendant hospital. Two of the treatments consisted of internal insertions of radium packs, performed by Dr. Baum and removed by the hospital's employees, and the remaining treatments consisted of X-ray administrations by the hospital. These treatments were prescribed pursuant to a diagnosis by Dr. Baum of carcinoma of plaintiff's cervix.

Plaintiff was forewarned that the radiation treatments would cause discomfort, nausea and diarrhea, all of which plaintiff in fact suffered. Blisters and soreness developed on plaintiff's abdomen which were cared for and eventual-

144

ly healed. On October 8, 1955, plaintiff was examined by Dr. Squires, head of the radiology department at the hospital, and this doctor ordered a stop to the radiation treatments. Three weeks later Dr. Squires and an intern examined plaintiff and told her to keep in touch with Dr. Baum. Plaintiff thereafter saw Dr. Baum once a week until December of 1955 when she was admitted to defendant hospital where a hysterectomy was performed by Dr. Baum.

In January of 1956, during the course of her postoperative treatment by Dr. Baum, plaintiff complained of rectal burning. Dr. Baum told her it was nothing to worry about as it was quite common following a hysterectomy. Plaintiff continued to complain of rectal burning, nausea and abdominal pain, but Dr. Baum told her that it frequently occurs after radiation treatments and that it was nothing to worry about. Plaintiff stated that Dr. Baum explained that taking radiation was like "going out in the sun and getting a sunburn and you peel."

In May of 1956, on orders of Dr. Baum, plaintiff received diagnostic X rays of her colon and lower back at defendant hospital. Plaintiff had been given a slip of paper by Dr. Baum upon which appeared the writing "bone shifting" followed by a question mark.

The conditions complained of above continued throughout the month of June, to which were added complaints of lameness and swelling of the buttocks. Dr. Baum examined plaintiff on June 1st and June 13th, and then referred plaintiff to Dr. O'Brien who also examined plaintiff. Plaintiff testified that Dr. O'Brien stated that it was his opinion that plaintiff's difficulties were caused by abscesses that were forming or by the inability to pass feces and that she should be hospitalized to see if something could be done to correct it.

Plaintiff was hospitalized by Drs. Baum and O'Brien in July of 1956. The hospital admitting clerk typed the

145

words "radiation colitis" on her admission card, which plaintiff testified was not the true reason for her admission because the hospital records showed it was for "radium and rectal burns."

Plaintiff testified that it was during this hospitalization that she first learned she had suffered any ill effects from the radiation treatments of the previous summer and fall. Dr. Gilchrist was brought into the case and ordered a proctoscopic examination of plaintiff. The examination, which was performed in the presence of Drs. Baum and O'Brien, revealed internal burns which plaintiff testified caused Dr. Gilchrist to comment that "the rectum looked like a blow torch had been applied to it and no doubt felt the same." Plaintiff thereafter underwent a series of 13 operations which continued until 1960.

Defendants filed motions for summary judgment, attached to which was plaintiff's discovery deposition, alleging the complaint was filed more than two years after the injuries alleged therein occurred, thereby failing to comply with Paragraph 15 of the Limitations Act (Ill Rev Stats 1965, c 83, Par 15,) and further alleging that the deposition and pleadings filed in the action failed to show any fraudulent concealment on defendants' part of plaintiff's cause of action which could give rise to the application of the five-year statute of limitations under Paragraph 23 of the Limitations Act. (Ill Rev Stats 1965, c 83, Par 23.)

Summary judgment was entered for both defendants, the court specifically finding that no fraudulent concealment was practiced by defendants upon plaintiff and that if such fraudulent concealment existed there was no reason to apply the section of the Limitations Act relied upon by plaintiff to extend the time for filing her cause of action. The court further specifically found there was no issue of material fact as to the pleaded limitation of action question.

Plaintiff maintains that the discovery deposition established a genuine issue of material fact as to fraudulent concealment of the cause of action, that plaintiff is entitled to have a jury determine this question, and that since fraudulent concealment of the cause of action exists, plaintiff was entitled to bring her action within five years from the date of the discovery of her cause of action, which was in fact done.

■ A motion for summary judgment will be allowed where the pleadings, depositions, admissions and affidavits, if any, on file in the case give rise to no genuine issue of material fact, and where the moving party is entitled to judgment as a matter of law. Ill Rev Stats 1965, c 110, Par 57; Giampa v. Sunbeam Corp., 68 Ill App 2d 425, 216 NE2d 233. Unless the record in this case discloses a triable issue relating to fraudulent concealment on the part of the defendants of plaintiff's cause of action, which would give rise to the application of the 5-year statute of limitations, the trial court properly entered summary judgment for defendants. We are of the opinion the record shows no fraudulent concealment of plaintiff's cause of action on the part of either defendant, nor any intention on their parts to deceive her.

Plaintiff was forewarned that she would suffer discomfort, nausea and diarrhea as a result of the radiation treatments, which in fact she did suffer in addition to blistering of the abdomen, all of which cleared up sufficiently for her to undergo a hysterectomy some two months after the treatments had stopped. During plaintiff's post-operative treatments by Dr. Baum, she complained of rectal burning, nausea, abdominal pain and, eventually, swelling of the buttocks and lameness. Dr. Baum at first attributed these symptoms to the effects of the hysterectomy and later to the normal effects of radiation treatments, colonic stricture and arthritis, and radiation colitis. There is no allegation or evidence that

these were not the causes of plaintiff's condition and no evidence that Dr. Baum knew plaintiff's condition was caused by excessive doses of radiation. The statements by Dr. Baum concerning the causes of her condition appear to be no more than medical opinions, not intended to deceive plaintiff. Merely alleging that a thing said was fraudulently said does not make it a fraudulent statement.

█ Inconsistent with plaintiff's position that Dr. Baum intended to conceal the true cause of her condition is the fact that he ordered a diagnostic X ray of plaintiff's colon and lower back in May of 1956, the fact that he referred plaintiff to Dr. O'Brien for consultation in June (who ascribed plaintiff's condition to the formation of abscesses or the inability to pass feces) and the fact that, with Dr. O'Brien, hospitalized plaintiff in July and caused her to be examined by Dr. Gilchrist who for the first time determined the cause of plaintiff's condition by way of protoscopic examination. The examination was attended by both Drs. Baum and O'Brien who also examined plaintiff at that time. The record clearly shows no fraudulent concealment or intention to deceive plaintiff by Dr. Baum with regard to plaintiff's cause of action.

█ █ With respect to the allegation of fraudulent concealment on the part of the defendant hospital, Dr. Baum was not alleged to be its agent. Consequently, the negligence of Dr. Baum, if any, in the treatment of plaintiff cannot be imputed to the hospital. Furthermore, plaintiff testified in her deposition that no person other than Dr. Baum concealed anything from her. She did state that the admitting clerk at the hospital admitted her for radiation colitis in July of 1956, which she testified was not true since the hospital records show she was admitted for "radium and rectal radiation burns." Not only is this hearsay on plaintiff's part which she would be unable to testify to on a trial of the issues (see Ill Sup Court Rule 191), but plaintiff stated in an answer to an

interrogatory that the operation performed on her in July of 1956 was a "temporary colostomy," an operation pertaining to the colon.

As the pleadings and the deposition do not disclose a triable issue of fact with respect to fraudulent concealment of plaintiff's cause of action by either defendant, plaintiff is not entitled to the application of the five-year statute of limitation. The trial court properly entered summary judgment for both defendants as a matter of law since the complaint was not filed within two years after the accrual of plaintiff's cause of action.

Therefore the judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.