FILIMON NOGACZ, Plaintiff-Appellee, *v.* PROCTER & GAMBLE MANUFACTUR-
ING Co. *et al.,* Defendants and Third-Party Plaintiffs-Appellees.—
(CEISEL & McGUIRE, INC., Third-Party Defendant-Appellant.)

First District (3rd Division) No. 58121

Opinion filed December 4, 1975.—Modified upon denial of rehearing
May 6, 1976.

638

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Alvin E. Domash, of counsel), for appellee Procter & Gamble Manufacturing Co.

McKenna, Storer, Rowe, White & Haskell, of Chicago (William J. McKenna and Robert S. Soderstrom, of counsel), for appellee Teutsch & Associates.

Lane, Falasz, Pollman and Hoyt, of Chicago, for appellee Filimon Nogacz.

Mr. JUSTICE MEJDA delivered the opinion of the court as modified upon denial of petition for rehearing:

Plaintiff, Filimon Nogacz, commenced this action against defendants-third-party plaintiffs, Procter & Gamble Manufacturing Co. (Procter) and Teutsch & Associates (Teutsch), to recover damages for personal injuries sustained in a fall from a scaffold located on Procter's premises. Defendants each filed third-party actions for indemnity against the third-party defendant, Ceisel & McGuire, Inc. (Ceisel), the masonry contractor and employer of plaintiff. Summary judgments providing for indemnity were entered in favor of Procter and Teutsch, defendants-third-party plaintiffs, against Ceisel. A consent judgment was entered in favor of plaintiff against Procter and Teutsch for $181,089.70, their settlement agreement. On the following day the trial court entered judgment for Procter and Teutsch and against Ceisel for $191,089.70, and also $15,816.51 for fees and expenses. Ceisel appeals from the entry of the summary judgments, the consent judgment and the monetary judgment entered against it in the third-party proceeding. The pertinent facts follow.

Plaintiff was employed by Ceisel, the masonry contractor engaged to repair a wall on Procter's building. Teutsch was the architect employed by the owner. On the day of the accident plaintiff was working on a scaffold owned and erected by Ceisel. The planks of the scaffold overlapped and were not fastened to the supporting cross-arms. As plaintiff backed a wheelbarrow of mortar off a hoist and onto the scaffold the planks bent and slipped, causing him to fall 20 feet onto a concrete apron. He sustained severe physical injuries.

Plaintiff commenced this action by filing a two-count complaint against

Procter and Teutsch, seeking damages predicated upon defendants' common law negligence and breach of the Illinois Structural Work Act (Ill. Rev. Stat. 1969, ch. 48, pars. 60-69). After an unsuccessful tender of defense of this suit to Ceisel's insurer and thereafter to Ceisel, Procter filed its answer to the complaint and also a two-count third-party complaint against Ceisel. Count I alleged a contractual duty of Ceisel to indemnify Procter upon an indemnity agreement between the parties which provided in substance that "Seller [Ceisel] agrees to indemnify and save buyer [Procter] harmless from any and all judgments, orders, decrees, awards, costs * * * which may be sustained * * * arising out of or in connection with the work done excepting only claims based solely on acts negligently committed by buyer * * *." In Count II Procter alleged that Ceisel was the active tort-feasor and was liable upon noncontractual implied indemnity or common law indemnity. Teutsch, in its third-party complaint against Ceisel also alleged that Ceisel's actions constituted active negligence, and sought to recover from Ceisel upon that theory. Ceisel's motion for summary judgment as to Count I of Procter's third-party complaint was denied. After a hearing, Procter's motion for summary judgment on Count I for contractual indemnity was granted on February 11, 1972. Ceisel had not filed any affidavit in opposition, and no objection is recited in the order granting summary judgment. The order, entered *nunc pro tunc* as of February 8, 1972, provided in relevant part:

> "IT IS HEREBY ORDERED that Summary Judgment is granted to third-party plaintiff, THE PROCTER & GAMBLE MANUFACTURING COMPANY, with respect to Count I of the Third-Party Complaint against third-party defendant, CEISEL & McGUIRE, INC., and that should judgment be entered against THE PROCTER & GAMBLE MANUFACTURING COMPANY in favor of plaintiff, FILIMON NOGACZ, the third-party defendant, CEISEL & McGUIRE, INC., is ordered to indemnify and hold the third-party plaintiff harmless from any and all judgments in addition to any and all costs, attorneys' fees and expenses incurred by the third-party plaintiff in this action up to $250,000."

In a letter dated February 10, 1972, to counsel for Procter, Ceisel demanded control of the defense to the claims of the plaintiff, and further, a severance and delay of trial as to the third-party action until the initial action was completed. Ceisel further demanded that in the event Procter was unwilling to agree to a partial severance or total severance, the third-party complaint be dismissed without prejudice to refiling subsequently. On February 17, 1972, Procter again tendered the defense of the main action to Ceisel. In a letter of that date, Procter stated that Teutsch and

Procter intended to proceed with their motions for summary judgment for noncontractual indemnity; that if granted, counsel could defend defendants without placing Ceisel before the jury and obviate the necessity and expense of a subsequent trial as to indemnity; and that if the motions were denied it would agree to a severance or a dismissal without prejudice to the third-party claims.

On May 19, 1972, the trial court granted summary judgment, *nunc pro tunc* as of May 18, 1972, for Procter as to Count II of its third-party complaint for noncontractual indemnity. Procter's motion was supported by affidavits and other documents. The order stated in part that Ceisel had waived the opportunity to file any pleading, exhibit or brief in opposition to the motion but objected to the entry of summary judgment for Procter upon the issue of indemnity. The order specifically provided, *inter alia*:

> "* * * the Court finding that there is no material and genuine disputed question of fact, and that the negligence, if any, of THE PROCTER & GAMBLE MFG. CO. is technical or passive in nature as a matter of law, whereas the negligence, if any, of CEISEL & McGUIRE, INC., is active or primary in nature as a matter of law;
>
> IT IS FURTHER ORDERED that should judgment be entered against THE PROCTER & GAMBLE MFG. CO. in favor of plaintiff, FILIMON NOGACZ, the third-party defendant, CEISEL & McGUIRE, INC. is ordered to indemnify and hold the third-party plaintiff, THE PROCTER & GAMBLE MFG. CO., harmless from any and all judgments so entered in addition to any and all costs, attorneys' fees and expenses incurred by the third-party plaintiff in defense of this action;
>
> * * *
>
> IT IS FURTHER ORDERED that the court finds there is no just reason to delay enforcement of or appeal from this order."

On May 24, 1972, summary judgment was entered on Teutsch's motion which similarly required Ceisel to indemnify and hold Teutsch harmless, and stated there was no just reason to delay enforcement or appeal. In addition, it provided that Ceisel need not file a notice of appeal until such time as one must be filed as to any judgment entered for plaintiff Nogacz.

On May 31, 1972, plaintiff filed his first amended complaint charging defendants only with violations of the Structural Work Act and omitting the negligence count. In a letter dated May 25, 1972, counsel for Ceisel demanded that Teutsch allow Ceisel to defend it against the claims of Nogacz in the initial action, and that Teutsch either so agree or rescind

the order granting summary judgment and dismiss the third-party complaint without prejudice to refiling. The letter noted the summary judgment in favor of Teutsch found no just reason to delay enforcement or appeal but allowed time for notice of appeal to begin upon entry of a judgment for Nogacz. Counsel maintained that the court was without power to enter a final order on the third-party complaint in the instant case.

During the May 24, 1972, hearing on Procter's motion for summary judgment as to noncontractual implied indemnity the court heard argument of counsel concerning Procter's and Teutsch's potential liability in the initial action. Ceisel again argued that it had the right to defend both third-party plaintiffs and to raise the issue of indemnity both in the trial court and on appeal. Procter stated in response: "You want to control the defense without our participation and refuse to indemnify us. This we cannot agree to." Thus, in effect, Procter tendered the complete defense of the initial action and sought a waiver of Ceisel's right to contest the indemnity issue. On the other hand, Ceisel sought to control the defense of Procter and Teutsch as to Nogacz while at the same time denying any liability on its part.

In a letter of May 25, 1972, from Procter to Ceisel, counsel restated the position of Ceisel taken at the May 24, 1972, hearing wherein Ceisel agreed to be bound by the state of the record upon a future appeal as to the noncontractual implied indemnity but intended to contest the contractual indemnity. The letter again tendered Procter's defense and requested that Ceisel hold Procter completely harmless, and stated that upon refusal, Procter would maintain its own defense and look to Ceisel and its insurer for reimbursement of all costs and expenses.

On May 31, 1972, Ceisel made an oral motion to vacate and rescind all summary judgments previously entered against it. The letter of February 10, 1972, to Procter demanding tender of the defense to the original claim and the response of Procter thereto on February 17, 1972, were introduced in support of the motion. During oral argument, counsel for Procter stated:

> "In addition thereto, we have indicated to Mr. Hatch [counsel for Ceisel] that if he would agree to appeal only on the state of the record as of the time both summary judgment orders were entered, it would permit him to defend Procter and Gamble.
>
> We have not had a formal reply to the tender or your alternate proposal. At this time I am asking Mr. Hatch to formally reply for the record."

Counsel for Ceisel then stated that it had the right to appeal from any and all orders entered with respect to the third-party complaints and that

Procter had previously made an unqualified tender of defense which had been accepted. Teutsch argued that Hatch, during a conversation, stated that if Ceisel and its insurer would agree that the summary judgment for Teutsch on its third-party claim was final and not appealable, Teutsch would agree to tender its defense to Ceisel. Ceisel advised that the insurer agreed to the terms but that Ceisel had refused. Teutsch then refused to tender its defense. The motion to set aside the summary judgments was denied.

Pretrial discussions concerning settlement of the claim of Nogacz were had in the presence and with the participation of the trial judge. Ceisel there stated that the insurer had authorized a settlement in the amount of $136,089.70, which represented an offer of $105,000 together with a waiver of lien for $31,089.70 for workmen's compensation paid. It was agreed that the offer was fair and that the insurer had indicated a willingness to pay $5,000 more if settlement could be achieved without an appeal. Plaintiff was then willing to accept $150,000 with a waiver of the $31,089.70 lien. The court was advised that Ceisel was willing to contribute an additional $10,000 if the matter could be settled prior to trial. Procter and Teutsch agreed to contribute $5,000 each toward a settlement.

On June 7, 1972, Procter and Teutsch filed separate answers to plaintiff's amended complaint and moved for summary judgment against Nogacz. After hearing, the court found a fact question existed as to who was "in charge of" the work, and denied the motion. On the same date, a consent order as to plaintiff, Procter and Teutsch was entered providing in substance (1) that judgment is entered against Procter and Teutsch in favor of plaintiff for $181,089.70, with costs and interest, subject to any Workmen's Compensation lien rights; (2) that execution, levy or enforcement of the judgment is stayed for 14 days after final judicial determination by appellate decision or otherwise of the liability of Ceisel or its insurer to Procter and Teutsch; (3) that upon final determination of responsibility or liability of Ceisel and/or its insurer, the judgment shall be fully enforceable, first against Ceisel's insurer, secondly against Ceisel, and finally against Procter and Teutsch equally; and (4) that plaintiff is required to refund or credit Procter and Teutsch with two-thirds of the $30,000 advanced by them to plaintiff as consideration for the execution of the consent judgment. On June 8, 1972, the court entered judgment in favor of Procter and Teutsch and against Ceisel for $191,089.70 and additionally for $15,816.51 fees and expenses.

On June 15, 1972, Ceisel moved to vacate the consent judgment. The motion was denied on June 23, 1972. On July 7, 1972, the trial court denied Ceisel's post-trial motion seeking reversal of the summary judg-

ments entered against Ceisel, reversal of the consent judgment entered June 7, 1972, the entry of a judgment in favor of Ceisel and against Procter and Teutsch, a remittitur or, in the alternative, a new trial.

## I.

On appeal Ceisel seeks reversal of the summary judgments entered against it and in favor of Procter and Teutsch, reversal of the consent judgment between Nogacz and Procter and Teutsch, reversal of the money judgment in favor of Procter and Teutsch and against Ceisel, and also, to remand the cause to the trial court for further proceedings. The primary issue raised here is whether or not judgment was properly entered in favor of Procter and Teutsch and against Ceisel on the third-party complaints. Other interrelated issues and arguments are raised by Ceisel which will be considered. We preliminarily note, however, that no argument is raised here as to the validity of the money judgment entered June 8, 1972, in favor of Procter and Teutsch and against Ceisel in the third-party proceedings. It appears that Ceisel inferentially attacks the money judgment on the ground that the prior summary judgments and the consent judgment are erroneous. Therefore, our discussion shall be limited to the arguments thus presented. We further note that Ceisel's "appeal" from the consent judgment, after careful examination of the argument in this court, is not truly an appeal from that judgment. No cases are cited to support a reversal of the consent judgment. The sole argument made thereto by Ceisel is that the settlement agreement was fraudulent and therefore, a material element in the indemnity action of Procter and Teutsch has not been sufficiently proved.

## II.

Both Procter and Teutsch, as third-party plaintiffs, sought noncontractual implied indemnity from Ceisel on the theory that their own liability to plaintiff, if any, was merely technical or the result of passive negligence on their part, whereas plaintiff's injuries were the proximate result of the active or primary negligence of Ceisel. Prior to trial both Procter and Teutsch presented motions for summary judgment supported by certain discovery depositions, answers to interrogatories and pleadings. Ceisel filed no affidavits in opposition. After argument, summary judgment was granted that Ceisel indemnify Procter and Teutsch if they were eventually held liable to Nogacz. On appeal Ceisel stated that the specific "question presented is whether the alleged violations of the Structural Work Act by the third-party plaintiffs can be characterized as technical or passive when compared to the alleged violations of third-party defendant." It is argued that resolution of this question involves

a weighing of the conduct of the third-party plaintiffs, Procter and Teutsch, and the third-party defendant Ceisel, which is a question of fact strictly within the particular province of the trier of fact.

■■ It is fundamental that summary judgment may be granted only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." (Ill. Rev. Stat. 1973, ch. 110, par. 57(3); and see *Stein v. Baum* (1967), 89 Ill.App.2d 142, 232 N.E.2d 96.) In *Miller v. DeWitt* (1967), 37 Ill.2d 273, 226 N.E.2d 630, allowing a third-party action for indemnity against the plaintiff's employer, the Supreme Court quoted extensively and with approval the following language from *Rovekamp v. Central Construction Co.* (1964), 45 Ill.App.2d 441, 449, 195 N.E.2d 756:

> "Although the liability imposed by the Act [Structural Work Act] does not rest upon negligence, there can be degrees of fault among those who, under the Act, are accountable to an injured plaintiff. Who is the more culpable, a party who supervises and coordinates the overall project, or a party who is responsible for the scaffolding and the particular work which produced the injury? Both are in charge of the work, to be sure, but of different phases of the work. Neither can escape liability to the plaintiff—thus the purpose of the Act is accomplished—but the lesser delinquent, if held accountable by the plaintiff, can transfer its statutory liability to the active delinquent, whose dereliction from duty brought about the plaintiff's injury."

In the instant case, several depositions were filed in support of the motions for summary judgment. Plaintiff stated therein that Ceisel owned the scaffold; that the planks which constituted the scaffold platform were not nailed to each other although they are safer when nailed together; that he asked his foreman for nails to secure the planks but was informed none were available; and that on the evening prior to the accident he raised the scaffold to the level at which it was located at the time of the accident. Joseph Ceisel of Ceisel & McGuire, Inc., testified on deposition that the scaffold in question was assembled by plaintiff and other employees; that Ceisel owned the scaffold; that the planks were not fastened to the scaffolding and no method was provided to keep the planks from moving; that on several occasions while on the scaffold he noticed that the planks were overlapping and not fastened; that he showed his foreman what to do to make the scaffold safe; and that no one from Teutsch was involved in the erection or moving of the scaffold or interfered in any manner with the work. Peter Krebs, Ceisel's foreman,

in his deposition testified that the architect visited the job site two or three times a week and inquired only as to the progress of the wall; that the architect had nothing to do with the scaffold, as to how it was being used or as to its safety; that Ceisel had no instructions from any one as to the use of the scaffold or its maintenance; and that none of the architect's representatives ever went up on the scaffold. Psihiris, an employee of Teutsch, testified on deposition that the plans provided by Teutsch did not specify a particular type of scaffold to be used, and that as construction superintendent his specific duty was to aid Procter's job engineer by answering questions and interpreting plans.

Ceisel here concedes that the evidence deposition testimony indicates that Procter and Teutsch elected to limit their participation in the construction of the building to such matters as the timely progress of the building, quality control, and the compliance with specifications of materials used. Procter's contract with Ceisel made reference to Ceisel's being an independent contractor. It is argued, however, that defendants Procter and Teutsch violated the Structural Work Act by wilfully neglecting their duty with respect to the safety of employees on the premises. Plaintiff's complaint alleged *inter alia* that defendants violated the Act in that they knew, or in the exercise of reasonable care should have known, that the scaffold was unsafe. In their respective claims for noncontractual implied indemnity, Procter and Teutsch alleged in substance that plaintiff's injuries were the proximate result of Ceisel's improper erection, operation and maintenance of the scaffold.

■■ As stated in *Mierzejwski v. Stronczek* (1968), 100 Ill.App.2d 68, 78, 241 N.E.2d 573:

> "If the court cannot determine with certainty from the pleadings that the negligence set forth against the indemnitee in the original complaint is, in all its respects, primary in nature, and the complaint for indemnity cannot be said, as a matter of law, to allege only misconduct of a less culpable nature, then the decision as to who should bear the eventual burden of liability is one rightfully entitled to be reserved for a hearing on the merits of the cause. Miller v. De Witt, 37 Ill.2d 273, 226 N.E.2d 630 (1967)."

In *Sack v. Arcole Midwest Corp.* (1961), 33 Ill.App.2d 344, 179 N.E.2d 441, plaintiff sued for injuries incurred when a handrail on a scaffold gave way. Although the general contractor's superintendent observed employees of the subcontractor attaching handrails with nails rather than with bolts as approved by custom and practice in the industry, the trial court directed a verdict for the general contractor on his third-party action. The appellate court, in sustaining the directed verdict, held as a matter of law that under the circumstances the acts of the subcontractor

constituted active negligence and those of the general contractor were passive. (See also *Jones v. McDougal-Hartmann Co.* (1969), 115 Ill.App. 2d 403, 253 N.E.2d 581; and *O'Leary v. Siegel* (1970), 120 Ill.App.2d 12, 256 N.E.2d 127.) In the instant case, as between Ceisel and Procter and Teutsch, the third-party plaintiffs, Ceisel was the active tortfeasor. One's failure to inspect a scaffold may create liability under the Structural Work Act; however, one who builds and erects the scaffold which causes injury, as between the two, is the active tortfeasor. (See *Shell Oil Co. v. Hercules Construction Co.* (1966), 74 Ill.App.2d 166, 219 N.E.2d 392.) In *Lindner v. Kelso Burnett Electric Co.* (1971), 133 Ill.App.2d 305, 273 N.E.2d 196, the court, commenting upon the active-passive distinction, stated at page 309:

> "[T]he one who erects, constructs, builds and maintains a scaffold may be the active tort-feasor as against one whose only duty to the third-party plaintiff is the duty to inspect, and the breach of which is passive rather than active."

The deposition testimony filed in support of the motions of Procter and Teutsch for summary judgment upon their noncontractual implied indemnity claims clearly established Ceisel's active wrongdoing. The entry of summary judgment was proper. See *Shell Oil Co. v. Foster-Wheeler Corp.* (E.D. Ill. 1962), 209 F.Supp. 931, *aff'd* (7th Cir. 1963), 320 F.2d 591.

### III.

In Count I of its third-party complaint Procter sought indemnification from Ceisel upon the indemnity agreement in the contract between them. The agreement, in which Ceisel was the "seller" and Procter the "buyer," provided:

> "8. Seller agrees to indemnify and save Buyer harmless from any and all judgments, orders, decrees, awards, costs, expenses, including attorney's fees and claims on account of damage to property or personal injuries (including death) which may be sustained by himself, his employees or Buyer, or Buyer's employees, or third persons, arising out of or in connection with work done, *excepting only claims based solely on acts negligently committed by Buyer* * * *." (Emphasis added.)

Summary judgment was entered in favor of Procter on this issue. Ceisel here argues that the above agreement excludes indemnity for the negligent acts of Procter. Procter, on the other hand, claims that summary judgment was proper because "reasonable men could not reach the conclusion that Procter & Gamble bore sole responsibility for this condition."

We note that this contract was entered into and plaintiff's cause of

action arose prior to enactment of the 1971 statute which voids as against public policy construction contract covenants which purport to indemnify a person against his own negligence. (Ill. Rev. Stat. 1973, ch. 29, par. 61.) However, at the time this contract was entered into it was the policy of this State to strictly construe indemnity agreements. Ordinarily, an agreement would not be construed as indemnifying one against his own negligence unless such a construction was required by clear and explicit language or such intention was expressed in unequivocal terms. (*Westinghouse Electric Elevator Co. v. La Salle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604.) In *Westinghouse,* for example, a contractual provision which specifically called for a contractor to indemnify an owner of the premises for any damages due to any act or omission by the *contractor* was construed as not requiring the contractor to indemnify the owner for the *owner's* own negligence, the court there stating that such a construction would impose on the contractor the duty to indemnify against injuries entirely outside his control. In *Tatar v. Maxon Construction Co.* (1973), 54 Ill.2d 64, 294 N.E.2d 272, a contract which provided for indemnity for *all claims* for damages which may occur on or about a subcontractor's work was construed as not requiring indemnity against the contractor's own negligence under the circumstances alleged in the pleadings. There an employee of the subcontractor brought suit against the general contractor, alleging that the injury occurred in an area where only the general contractor's employees were working. In *Zadak v. Cannon* (1974), 59 Ill.2d 118, 319 N.E.2d 469, where a seller's employee brought suit against a buyer, alleging negligence by the buyer's employee, an agreement which provided that the seller indemnify the buyer for any and all suits arising out of *any work of the seller* was construed as not requiring by clear and explicit language indemnification against the buyer's negligence.

In *Zadak* the court recognized the futility of attempting to reconcile the numerous cases interpreting indemnity clauses, and said that each case depends on its particular *facts* and the *language* used in the agreement. In each of the cited cases the indemnitee sought indemnification for injury caused by his own employee's negligence. In the matter before us, however, the *facts* indicate that the indemnitor, Ceisel, was responsible for the scaffold on which its own employee was injured, and the *language* used in the indemnity agreement, on a fair reading, indicates that it was the intention of these parties to include a claim based on these facts. It has been held that the primary object in construing an indemnity agreement is to give effect to the intention of the parties. As stated in *Schek v. Chicago Transit Authority* (1969), 42 Ill.2d 362, 364, 247 N.E.2d 886:

"Their intent must be determined solely from the language used when no ambiguity in its terms exists, and a strict construction of that language which reaches a different result from that intended by the parties should not be adopted. *Schiro v. Gould & Co.*, 18 Ill.2d 538."

■■ We find no ambiguity in the terms of the agreement before us. We cannot isolate the phrase "indemnity * * * from any and all judgments * * *" and say that under the authority of *Westinghouse* this agreement does not require by clear and precise language indemnity against one's own negligence. We must presume that every word of the agreement was deliberately inserted, and we cannot consider some clauses and ignore others. (*Valerio v. R & R Construction Co.* (1974), 20 Ill.App.3d 48, 312 N.E.2d 713; *De Tienne v. S. N. Nielsen Co.* (1963), 45 Ill. App. 2d 231, 195 N.E.2d 240.) Thus, we cannot ignore the phrase "excepting only claims based solely on acts negligently committed by Buyer [Procter] * * *"; and giving effect to this phrase and especially to the word "solely" in the context of the entire provision, we conclude that it was the intention of these parties that Ceisel indemnify Procter for all personal injury and propery damage claims, including those based on Procter's own negligence only if such a claim was not based *solely* on Procter's negligence.

■■■ Moreover, Procter's motion for summary judgment on Count I of the third-party complaint was supported by discovery depositions, documentary evidence, sworn answers to interrogatories and affidavits. One of the supporting depositions is that of Joseph Ceisel, secretary-treasurer of Ceisel & McGuire, Inc., wherein he states that the selection, erection and safety of the scaffold was the responsibility of Ceisel. Furthermore, Ceisel filed no contrary affidavits or factual material in opposition to Procter's motion for summary judgment. Although a party opposing summary judgment is not required to file counteraffidavits, if the moving party's affidavits are uncontested, material facts stated therein must be accepted as true. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 547.) The uncontested statements in Procter's supporting affidavits indicate that Procter did not bear sole responsibility for the condition of the scaffold. According to the clear language of the contract only those claims "based solely on acts negligently committed" by Procter would not be indemnified. In the main action Nogacz brought suit against *both* Procter and Teutsch, alleging that the scaffold was not constructed, placed or operated in a safe, suitable and proper manner so as to afford him proper and adequate protection as required by statute, Procter in turn filed a third-party complaint against Ceisel alleging a contractual duty of indemnification. In view of the uncontested fact that

Ceisel was responsible for the scaffold, it is clear that Nogacz' claim does not fall within the quoted exception. Ceisel therefore has a contractual obligation to indemnify and save Procter harmless in this matter. We hold that Procter was entitled to summary judgment on the question of liability on Count I of its third-party complaint.

## IV.

Ceisel further argues that the judgment entered against it is improper because there had been no adjudication of an essential element of the third-party cause of action for indemnification; that is, no adjudication of Procter's and Teutsch's liability to Nogacz.

■■ The opinion in *Warzynski v. Village of Dolton* (1974), 23 Ill.App.3d 50, 317 N.E.2d 694, *rev'd on other grounds* (1975), 61 Ill.2d 475, 338 N.E.2d 25, contains an excellent survey of the principles covering the proper application of the doctrine of noncontractual implied indemnity. The court observed that the doctrine is really no more than an exception to the general principle that there is no contribution between joint tort-feasors. Where the exception applies the following rules govern:

> "From our examination of the cases in Illinois and other juris-
> dictions, we are of the opinion that there are two critical pre-
> requisites for the invocation of non-contractual implied indemnity;
> first, the damages which the third-party plaintiff seeks to shift are
> imposed upon him as a result of some legal obligation to the plain-
> tiff in the principal action; and second, it must appear that the
> third-party plaintiff did not actively or affirmatively participate in
> the wrong.
>
> As to the first of these prerequisites, we believe it must appear
> that the third-party plaintiff had an obligation to pay; *i.e.,* where
> a judgment has been entered or in a situation where a settlement
> was made, that it was justified on some legal basis. (See *Sleck
> v. Butler Bros.,* 53 Ill.App.2d 7, 202 N.E.2d 64.) As to the second
> prerequisite, it should be noted that although the term 'actively'
> is commonly used in implied indemnity situations, we have added
> the word 'affirmatively,' because it appears to us that the trend in
> the Illinois cases and in other jurisdictions now requires a showing
> that a third-party plaintiff did not breach an affirmative duty
> owed to the plaintiff in the principal case." 23 Ill.App.3d 50, 61.

Putting aside for the moment the sequence of events which led to the settlement between plaintiff and Procter and Teutsch (and Ceisel's argument that such sequence resulted in prejudice to it), the record shows that plaintiff's claim was settled for a total of $191,089.70. The consent judgment embodying the settlement agreement was entered sub-

sequent to the denial of third-party plaintiffs' motion for summary judgment against Nogacz. The court, in ruling upon the motion, stated: "I believe, certainly under the facts before the court, the finder of facts ultimately in a case such as this, could easily find either or both of the defendants in charge." Nogacz originally sought damages in the sum of $1,000,000. It appears from the record that settlement negotiations between plaintiff and third-party plaintiffs had commenced some time prior to the entry of summary judgments for Procter and Teutsch on their third-party actions for noncontractual implied indemnity. Prior to entry of the consent judgment the court was advised that plaintiff offered to settle for $150,000 plus a waiver of lien for workmen's compensation benefits paid. During those informal negotiations Ceisel's insurer offered the aggregate sum of $136,089.70. Ceisel expressed a willingness to contribute an additional $10,000, and Procter and Teutsch offered to contribute $5,000 each. Ceisel's insurer indicated that it could contribute an additional $5,000. Thus, the total settlement figure was approximately $161,089.70.

Ceisel contends that Procter and Teutsch acted as volunteers in effecting a settlement with Nogacz; that they did not prove their liability to Nogacz an essential element in their action for indemnity; and that the entry of summary judgments on the third-party plaintiffs' implied indemnity actions prior to the entry of the consent judgment was prejudicial in that Ceisel was thereby precluded from asserting against plaintiff any defenses that Procter and Teutsch may have had.

■■ In *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill.App.3d 165, 169, 298 N.E.2d 289, the court stated:

> "We hold that, in addition to proving the primary liability of the indemnitor for the injury occasioning a settlement, an indemnitee who settles without notice to the prospective indemnitor need prove only that, by settling, he was responding to a reasonable anticipation of personal liability rather than acting as a mere volunteer. The reasonableness of the amounts paid in settlement is a matter bearing solely upon the issue of damages."

In the instant case it is manifest that Procter and Teutsch were confronted with and responded to a reasonable anticipation of liability. Plaintiff's pleadings alleged facts to establish liability for their failure to inspect and render the scaffold safe. The court held that a fact question existed as to whether or not they were "in charge of" the work. Upon review of the record on appeal, we hold that Procter and Teutsch were responding to a reasonable anticipation of liability in effecting a settlement with plaintiff.

## V.

Procter argues that the instant appeal from the entry of summary judgment on its common law indemnity claim against Ceisel was not timely. The order entered on May 24, 1972, provided that summary judgment was entered for Procter and against Ceisel "for any judgments so entered" against Procter, and further provided that "there is no just reason to delay enforcement of or appeal from this order."

Supreme Court Rule 304(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 304 (a)) provides in relevant part:

> "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a *final* judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying enforcement or appeal." (Emphasis added.)

"To be final and appealable, a judgment or order must terminate the litigation between the parties on the merits of the cause, so that, if affirmed, the trial court has only to proceed with the execution of the judgment." (*Village of Niles v. Szczesny* (1958), 13 Ill.2d 45, 48, 147 N.E.2d 371.) An order which is not final in its character apart from the special finding is not appealable. (*Midstates Finance Co. v. Waller* (1966), 67 Ill.App. 2d 437, 440, 214 N.E.2d 624.) It has been held that an order appointing a guardian *ad litem* is not final in character notwithstanding the written finding of appealability (*Harris Trust & Savings Bank v. Briskin Manufacturing Co.* (1965), 63 Ill.App.2d 12, 211 N.E.2d 32); however, an order quashing summons was held final because among other things it finally disposed of the case as to the defendant. *Brauer Machine & Supply Co. v. Parkhill Truck Co.* (1943), 383 Ill. 569, 50 N.E.2d 836.

■■ In the instant case the orders granting summary judgment in favor of Procter and Teutsch were not final and appealable until the entry of judgment against Ceisel, notwithstanding the express written findings of the court as to appeal. The previous summary judgment orders at most adjudicated the relative liability to Nogacz as between the defendants-third-party plaintiffs (Procter and Teutsch) and Ceisel. As no judgment for damages was entered at that time the summary judgment orders did not then dispose of the case as to the third-party action.

## VI.

■■ The main thrust of Ceisel's argument here on appeal is that the judgment entered against it upon Procter's and Teutsch's third-party action was the product of collusion and the use of improper procedure. It is contended that the ruling on the third-party plaintiffs' motions for summary judgment should have been held in abeyance until disposition

of the main proceeding, and that failure to do so deprived Ceisel of its right to assert any defenses to plaintiff's claim that Procter and Teutsch may have had. Section 25(2) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 25(2)) provides, *inter alia*:

> "The third-party defendant may assert any defenses which he has to the third-party complaint or which the third-party plaintiff has to the plaintiff's claim and shall have the same right to file a counterclaim or third-party complaint as any other defendant."

The court in *Maas v. Ottawa Stockdale Fertilizer, Inc.* (1972), 9 Ill.App. 3d 33, 35, 291 N.E.2d 514, stated:

> "The purpose of this section [25(2)] is the same as that of Federal Rule 14, which is to save the time and cost of a reduplication of evidence, to obtain consistent results from identical or similar evidence, and to do away with the serious handicap to a defendant of a time difference between a judgment against him, and a judgment in his favor against the third party defendant. (*Muhlbauer v. Kruzel*, 39 Ill.2d 226, 234 N.E.2d 790.) Section 25(2) was designed to avoid circuity of action and 'to permit the determination of the rights and liabilities of all parties before a single tribunal and upon the same evidence.' *Miller v. DeWitt*, 37 Ill.2d 273, 226 N.E.2d 630."

The court further stated that the third-party practice section is not a device for tendering a new party to plaintiff. See also *D'Amico v. Moriarty Meat Co.* (1964), 47 Ill.App.2d 63, 197 N.E.2d 445.

Ceisel here argues that since the issue of active-passive liability had already been determined prior to the entry of the consent judgment, it was precluded from asserting any defenses that Procter and Teutsch may have had to the claim of Nogacz. We do not agree. Ceisel does not state in its briefs before this court what defenses may have been raised or how it was prevented from raising them. The record discloses that Ceisel in its answers denied the allegations in the third-party complaints of Procter and Teutsch, but did not raise any defenses which it may have had to the third-party complaint or which Procter and Teutsch may have had to the claim of Nogacz.

The defenses either to the third-party complaint or those available to the defendant in the original action must be raised by the third-party defendant within the context of the third-party action. This is in accord with the language and purposes of section 25(2). The foregoing subsection (2) permits a defendant by third-party complaint to bring in a person not a party to the action "who is or may be liable to him" but it is not a device for tendering a new defendant to the plaintiff, nor does it create substantive rights. (*Muhlbauer v. Kruzel* (1968), 39 Ill.2d 226,

230, 234 N.E.2d 790.) If the third-party defendant was permitted to assert such defenses to plaintiff's original action it would in effect tender to plaintiff a new party with substantive rights. Such procedure is not authorized under the third-party practice in Illinois. See *Maas v. Ottawa Stockdale Fertilizer, Inc.*

## VII.

Ceisel further argues that "Unless third party defendant was allowed to take over that defense, the prior summary judgments on the indemnity issue meant that the third party defendant would have to pay any judgment which resulted from the trial of the plaintiff's action against the defendants-third party plaintiffs even though the third party defendant would not be a participant in the trial." Since the filing by Nogacz of the original claim, Procter, Teutsch and Ceisel have argued over who is to assume defense of the action. The record shows that Procter tendered its defense if Ceisel would admit liability; Teutsch did the same. Ceisel denied liability to Procter and Teutsch but continued to demand the right to conduct the defense of the original claim. Ceisel has cited no authority, and we find none that, absent an express agreement which may so provide, an indemnitor has the right to defend the indemnitee and at the same time deny all liability. The contract between Ceisel and Procter provided only for indemnity and not for the defense of any claims made against the indemnitee. The Court of Appeals, in *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills, Inc.* (10th Cir. 1954), 211 F.2d 785, 788, held that although ordinarily a third-party plaintiff must prove liability to the injured plaintiff, "where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage."

■■ In the instant case, Ceisel denied liability to Procter and Teutsch but demanded the right to control their defense in the original action. At this point, defendants had the right to proceed on the third-party action against Ceisel and to effect a good faith settlement. After the entry of the summary judgments for Procter and Teutsch upon their third-party noncontractual indemnity claims it is understandable that Ceisel fervently demanded its right to control their defense of the original action. However, as previously noted, the summary judgments merely disposed of one element of the third-party claims for indemnity, the liability of Ceisel to Procter and Teutsch. These judgments, as Ceisel has maintained throughout the litigation, were not final and were subject to revision by the trial court. (See *Village of Niles v. Szczesny;* and *Krambeer*

*v. Canning* (1962), 36 Ill.App.2d 428, 184 N.E.2d 747.) This was fully recognized by Ceisel and the trial court. Shortly before the entry of the consent judgment, Ceisel moved to vacate the summary judgments previously entered. The motion was denied. The issue was again raised in Ceisel's motion to vacate the judgments of June 7 and 8, 1972, and in its post-trial motion. Both motions were denied.

Ceisel argues that ordinarily a defendant-third-party plaintiff's liability to the plaintiff is adjudicated or resolved by settlement or trial prior to the disposition of the third-party action. Such has been the customary procedure in this State. (See *Boston v. Old Orchard Business District, Inc.* (1960), 26 Ill.App.2d 324, 168 N.E.2d 52; and *Sack v. Arcole Midwest Corp.* (1961), 33 Ill.App.2d 344, 179 N.E.2d 441.) Our research has disclosed only the following single case in which a trial court's prior entry of summary judgment on a third-party complaint was reversed as premature. In *Opheim v. Norfolk & Western Ry. Co.* (1970), 123 Ill. App. 2d 211, 259 N.E.2d 855, a written agreement for contractual indemnity excepting liability caused by the sole negligence of the indemnitee was involved which contained no requirement to provide or assume a defense in any action. After having assumed defense of defendant for a brief period at the outset, third-party defendant revoked its acceptance of defense. The third-party complaint which had been dismissed was re-filed. Summary judgment was then entered which bound the third-party defendant to indemnify third-party plaintiff and to assume its defense in the original action since "it had made a binding election." The issues there presented were the propriety of a summary judgment imposing an indemnity agreement by estoppel, and absent a detrimental change of position, the right to revoke an initial acceptance of defense accepted by mistake. This court reversed the summary judgment and held that there was no duty to defend and that since there had been no trial on plaintiff's complaint and no determination as to whether the accident was due to the indemnitee's sole negligence, "it thus appears premature to assess the duty of indemnification at this point." (123 Ill.App.2d 211, 222.) However, the case before us is distinguishable. Here, unlike *Opheim,* Procter established the material fact that it was not solely liable by the evidentiary documents filed in support of its motion for summary judgment. As stated earlier, the uncontested statements establish that Ceisel was responsible for the safety of the scaffold and that therefore plaintiff's claim was not based solely on acts negligently committed by Procter. A judgment for damages was entered in the original action for plaintiff and against Procter and Teutsch. This case does not present the question of indemnification in the abstract as in *Opheim.*

■■ In *Harvan v. Arthur C. Trask Co.* (1964), 47 Ill.App.2d 403, 198 N.E.2d 183, the appellate court reversed the trial court's dismissal of

the third-party complaint and stated, albeit dicta, that the trial on the issue raised in the third-party complaint should be held in abeyance until the issues in the original action had been determined. The court found that a fact question existed on the issue of active-passive negligence as raised in the third-party complaint. In *Gertz v. Campbell* (1973), 55 Ill.2d 84, 302 N.E.2d 40, the appellate court had reversed the trial court's judgment dismissing defendant's third-party complaint and remanded with instructions to defer the evidentiary hearing on the third-party action until disposition of the issues in the main proceeding. The Supreme Court, after citing *Harvan* as contra, held that it was error for the appellate court in *Gertz* to issue such instructions, and stated at page 92: "[T]he greater number of decisions hold that the question of deferring the hearing or not is a matter within the trial court's discretion. We consider this view is to be preferred." Since the determination is a matter within the trial court's discretion the decision in the instant case not to defer such ruling will not be disturbed unless it is clearly shown to be an abuse of such discretion.

## VIII.

 The deposition testimony filed in support of the motions of Procter and Teutsch for summary judgment clearly indicated that it was Ceisel who was the active wrongdoer. (See *Lindner v. Kelso Burnett Electric Co.* (1971), 133 Ill.App.2d 305, 273 N.E.2d 196; *Shell Oil Co. v. Hercules Construction Co.* (1966), 74 Ill.App.2d 166, 219 N.E.2d 392; and *Sack v. Arcole Midwest Corp.* (1961), 33 Ill.App.2d 344, 179 N.E.2d 441.) The record does not sustain Ceisel's unsupported allegations in this court that it was prevented from asserting any defenses in the third-party action (see *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.* (1973), 12 Ill.App.3d 165, 298 N.E.2d 289), nor does it show that the settlement was made in bad faith. On the contrary, the record supports a good faith settlement which was justified on the basis of the defendants' potential liability to Nogacz for technical violations of the Structural Work Act. (See *Warzynski v. Village of Dolton* (1974), 23 Ill.App.3d 50, 317 N.E.2d 694; *Chicago, R.I. & P.R. Co. v. Dobry Flour Mills*; *St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.*) The summary judgments entered on Procter's and Teutsch's claims for implied indemnity were not final when entered but were subject to revision by the trial court at any time prior to the entry of a final monetary judgment in the third-party proceeding. When they settled with Nogacz and the judgment embodying the terms of the agreement was entered, Procter and Teutsch faced the potential risk of being held primarily liable to plaintiff if the prior summary judgments were reversed. Al-

though it may have been preferable for the trial court's determination of the third-party issues to have been made subsequent to disposition of the issues in the original action because of a possibly greater potential for fraud, the record in the case affirmatively shows that the third-party defendant, Ceisel, suffered no prejudice and that the court did not abuse its discretion.

## IX.

Finally, we note the consent judgment entered June 7, 1972, pursuant to the stipulation of plaintiff, Procter and Teutsch, as evidenced by the signatures of their respective attorneys on the draft order. In paragraph 1 judgment is entered for plaintiff and against defendants Procter and Teutsch. Paragraph 2 stays enforcement for 14 days after the final judicial determination of the liability of the third-party defendant Ceisel or its insurer to Procter and Teutsch. Paragraph 3 then provides *inter alia* that upon such final determination the judgment shall become fully enforceable and collectible by plaintiff Nogacz, through usual judicial process, provided that said plaintiff shall enforce said judgment "first against the insurer of CEISEL & McGUIRE, INC., secondly against CEISEL & McGUIRE, INC., and lastly" against the defendants Procter and Teutsch.

■■ It is a fundamental rule of law that plaintiff cannot recover judgment against parties who are not named in his complaint and against whom he did not seek relief. Neither Ceisel or its insurer was a party to plaintiff's complaint, nor did they consent or stipulate to the entry of the order. Defendants Procter and Teutsch have not appealed from the foregoing judgment entered against them. Plaintiff is not entitled to recover judgment directly against either Ceisel or its insurer. Therefore, the judgment as to that part set forth in the above-quoted portion of paragraph 3 providing for enforcement or collection of the judgment against Ceisel and its insurer is reversed, and is affirmed as to the remaining part. See *Allen v. Jungkans* (1963), 45 Ill.App.2d 287, 195 N.E. 2d 436 (abstract opinion).

## X.

For the reasons stated, the summary judgment in favor of third-party plaintiff Procter against Ceisel for contractual indemnity is affirmed; the summary judgment for third-party plaintiffs Procter and Teutsch for non-contractual indemnity is affirmed; the consent judgment for plaintiff Nogacz and against defendants Procter and Teutsch is reversed as to that part of paragraph 3 which provides "first against the insurer of Ceisel & McGuire, Inc., secondly, against Ceisel & McGuire, Inc., and lastly [against Procter and Teutsch]," and affirmed as to the remainder

part; and the judgment in favor of third-party plaintiffs Procter and Teutsch and against third-party defendant Ceisel is affirmed.

Affirmed in part; and reversed in part.

McGLOON, P. J., and DEMPSEY, J., concur.