Alberta SMITH, as next friend of Willena Hatcher, a minor, Plaintiff,

v.

Jeffrey LYLES, T–Force Security, Inc., and Chicago Housing Authority, Defendants.

CHICAGO HOUSING AUTHORITY, Cross–Plaintiff,

v.

T–FORCE SECURITY INC.,[1] Cross–Defendant.

No. 93 C 1316.

United States District Court, N.D. Illinois, E.D.

Nov. 30, 1993.

---

1. Although the motion to dismiss the cross-claim is brought by both Jeffrey Lyles and T–Force Security, Inc., the Chicago Housing Authority only names T–Force Security, Inc. in its cross-complaint. The court will treat the cross-complaint as asserting a claim against T–Force Security, Inc. only.

Kevin Barry Rogers, Kevin Rogers & Associates, Chicago, IL, for plaintiff.

Donald E. Stellato, Theodore C. Hadley, Esther Joy Schwartz, Stellato & Schwartz, Ltd., Stanley L. Hill, Christopher Welling Graul, Jennifer H. Lee, Stanley L. Hill & Associates, P.C., Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court is the motion of cross-defendant T–Force Security Inc. ("T–Force") to dismiss the cross-complaint of the Chicago Housing Authority ("CHA"). The motion is denied for reasons stated below.

## BACKGROUND

The facts of this case are set forth at 822 F.Supp. 541, 542–43 and need not be repeated here in detail. The gravamen of the complaint centers around the shooting of a minor female by a security guard at one of CHA's housing developments. The security guard was an employee of T–Force, which in turn was under contract with the CHA to provide security services for the housing development at 5322 South Federal Avenue in Chicago, Illinois. The minor was struck in the face by the security guard's bullet and suffered serious injuries.

CHA's cross-claim seeks indemnity from T–Force for the incident in question. Count IV of plaintiff's complaint alleges claims against CHA based on its negligent hiring and negligence in investigating and training T–Force, an independent security company. Count V alleges that CHA breached a duty to supervise, set standards for, or to train security personnel and failed to set minimum standards for the hiring and training practices of the employees of T–Force. The complaint alleges that CHA voluntarily assumed

those duties. These two counts assert claims against CHA based upon its own negligence.

## DISCUSSION

■ Absent clear and explicit language, an indemnity contract will not be construed under Illinois law as indemnifying one against his or her own negligence. *Westinghouse Elec. Elevator Co. v. La Salle Monroe Building Corp.*, 395 Ill. 429, 70 N.E.2d 604, 607 (1946). Each case depends upon its own facts and upon the language used in the agreement. *Nogacz v. Procter & Gamble Manufacturing Co.*, 37 Ill.App.3d 636, 347 N.E.2d 112, 121 (1975). The court must give the indemnity clause a fair and reasonable interpretation. *Lohman v. Morris*, 146 Ill. App.3d 457, 100 Ill.Dec. 263, 497 N.E.2d 143, 145 (1986). Moreover, the "primary object in construing an indemnity agreement is to give effect to the intention of the parties." *Nogacz*, 347 N.E.2d at 121.

■ The relevant portions of the security contract entered into between CHA and T–Force read as follows:

> [T–Force] agrees ... [to purchase insurance insuring] ... CHA ... against any and all losses, claims, damages or injury arising out of any claim involving the providing of or the alleged failure to provide contracted security services or adequate services.

> Notwithstanding the providing of such insurance, [T–Force] agrees to indemnify and hold harmless CHA ... against any liability or expense (including the cost of legal defense and attorney's fees) arising out of any losses, claims, damages or injury resulting from any intentional acts or any negligent acts or omissions of [T–Force] or its agents in the performance of this contract.

This language clearly and explicitly demonstrates that, under the circumstances of the present case, the intention of the parties was to provide indemnity for CHA even against liability based upon its own negligence. Minor Willena Hatcher's ("Hatcher") injury is directly connected with the work T–Force performed under the contract with CHA. *See Smart v. International Harvester Co.*, 33 Ill.App.3d 241, 337 N.E.2d 68, 71 (1975) (requiring that act causing injury be directly connected with and part of the work being performed under contract to fall within indemnity agreement). The injury to Hatcher resulted from the acts of T–Force's employee, either intentional or negligent, in the performance of the contract. CHA's liability is only premised on the allegation that T–Force's employee's improper act would have been avoided but for CHA's negligence. Thus, the negligent acts or omissions of CHA in hiring, supervising, and training T–Force is directly related to T–Force's performance of the contract. Accordingly, the acts of T–Force were within the risks contemplated by both parties in their indemnity agreement. *See also Bentley v. Palmer House Co.*, 332 F.2d 107, 111 (7th Cir.1964) (indemnification against any and all liability arising out of the use of exhibit space covered injury caused by collapse of display table due to owner's own negligence).

Moreover, the court's interpretation of the indemnification provision is fair and reasonable when examined in light of T–Force's duty to procure insurance under the contract with CHA. The contract requires T–Force to procure insurance, including insurance against any and all losses, claims, damages, or injury which arises out of a claim that involves the providing of or the alleged failure to provide security services or adequate services. In conjunction with this provision, T–Force was contractually obligated to indemnify CHA against liability arising out of *any* claim or injury that *resulted from* the conduct of *T–Force's employees* in their performance of those security services.

The contract does not manifest an intent to provide indemnity for every act occasioned by CHA's performance of the contract. *See Mesker Bros. Iron Co. v. Des Lauriers Column Mould Co.*, 8 Ill.App.3d 113, 289 N.E.2d 223, 225 (1972). For instance, T–Force is not holding CHA harmless from liability arising from the actions of other security companies or from acts not brought about by T–Force. If an employee of T–Force was injured due

to the negligent acts of one of CHA's employees and sued CHA, the result may be different. *See Zadak v. Cannon,* 59 Ill.2d 118, 319 N.E.2d 469, 472 (1974). Thus T–Force is not indemnifying CHA for liabilities that arise from acts entirely outside T–Forces's control. Nonetheless, the present indemnity agreement includes those situations in which the performance of the contract by T–Force set the stage for which CHA is to be held liable.

In *Westinghouse,* the indemnity provision provided that the contractor would indemnify the owner from suits "arising out of any acts or omissions by the Contractor ... in the course of any work done in connection with any matters set out in the contract." *Westinghouse,* 70 N.E.2d at 606. This language did not cover the injuries caused by the negligence of the owner's employee. That case is distinguishable because the indemnitee (owner) sought indemnification for injuries caused by the acts of its own employee and not for injuries arising out of the indemnitor's (contractor) acts. *See Quilico v. Union Oil Co.,* 58 Ill.App.3d 87, 15 Ill.Dec. 784, 789, 374 N.E.2d 219, 224 (1978) (making this distinction) (quoting *Nogacz,* 347 N.E.2d at 121)). Because T–Force's employee was involved in causing the injuries while performing his duties under the security services contract, and a fair reading of the language used in the indemnity agreement indicates that the parties intended to include a claim against CHA based on the facts before the court, CHA is entitled to indemnification from T–Force.

## CONCLUSION

For the reasons stated below, the court denies T–Force's motion to dismiss CHA's cross-complaint.

IT IS SO ORDERED.